## Case No. 9,114.

MARSH v. COMMISSIONER OF PATENTS.

[The case reported under above title in 3 Biss. 321, is the same as Case No. 9,119.]

---

## Case No. 9,115.

MARSH v. DODGE & STEVENSON MANUF'G CO.

[6 Fish. Pat. Cas. 562;[1] 5 O. G. 398; Merw. Pat. Inv. 213.]

Circuit Court, N. D. New York. 1873.

PATENTS — CLAIM TO RESULT — LOCATION OF APPARATUS — COMBINATION — NEW DEVICES — NEW AND USEFUL RESULT — REVOLVING RAKE.

1. A claim to a result is not in itself patentable.

2. A claim can not be sustained which covers every mode or means by which certain advantages can be secured in a harvester.

3. The mere location of an old apparatus on a machine is not patentable.
[Cited in Gilbert & Barker Manuf'g Co. v. Tirrell, Case No. 5,417; Gilbert & Barker Manuf'g Co. v. Walworth Manuf'g Co., Id. 5,418.]

4. If such new location produced a new combination of devices, producing a new result, it is patentable.
[Cited in Carstaedt v. U. S. Corset Co., Case No. 2,467; Gilbert & Barker Manuf'g Co. v.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

Tirrell, Id. 5,417; Gilbert & Barker Manuf'g Co. v. Walworth Manuf'g Co., Id. 5,418.]

5. If such change of location requires new devices, and a new and useful result is produced, then the location in combination with the devices—the means by which the result is produced, not the result itself—is patentable.
[Cited in Gilbert & Barker Manuf'g Co. v. Tirrell, Case No. 5,417; Gilbert & Barker Manuf'g Co. v. Walworth Manuf'g Co., Id. 5,418.]

6. In these cases there is no infringement, unless the devices, by which the result is produced, are used.

7. The revolving-rake made by the Dodge-Stevenson Company does not infringe the Marsh patent.

Final hearing on pleadings and proofs.

Suit brought on reissued letters patent, granted James S. Marsh, for "improvement in harvesters," September 11, 1866, No. 2,354, as a reissue of the patent [No. 37,630] granted him February 10, 1863.

The first engraving shows the machine as patented by Marsh. The second shows the machine as afterward improved by him, and described in a later patent.

Jas. O. Parker and D. Wright, for complainant.

Geo. Harding, for defendant.

WOODRUFF, Circuit Judge. Upon a careful and protracted examination of the evidence, and consideration of the views exhibited in the elaborate printed arguments of the counsel for the respective parties, my conclusion is, that the defendants do not infringe the patent of the complainant for a raking and reeling apparatus for a reaping-machine in any feature which was new, and which the patent, properly construed, legally secures to the patentee.

The claims which it is alleged that the defendant impinges are the first, second, third, fourth, seventh, seventeenth, and eighteenth.

"1. The combined raking and reeling apparatus which rotates around a vertical shaft, when its arms adjust themselves successively from a horizontal to a vertical position, and when the combined apparatus is so located that its arms swing on hinges, which are below the highest point of the drive-wheel, and the extent of the sweep of any one of the arms does not interfere with a driver seated upon any part of the draft-frame, which is outside of the drive-wheel, substantially as described.

"2. The construction and adaptation of a combined rake and reel, which revolves entirely around a vertical center, so that it may be applied to the harvester at a point which is on the inner side of the drive-wheel, and below the highest point of said wheel, substantially as described.

"3. Locating the hinges of the respective arms of the combined rake and reel around a center, which is on the inner side of the drive-wheel and below the top of said wheel, substantially as described.

No. 1.

No. 2.

"4. Attaching each of the respective arms of the combined rake and reel to a hinge or pivot, which is on the inner side of the drive-wheel and below the top of the same, substantially as described."

"7. The construction of the crown-wheel with boxes for a series of rake and reel arms, in the manner described and shown."

"17. So arranging a revolving, raking, and reeling device, having two or more arms, including the rake as one arm, that the driver can sit on the machine and drive the team, the shaft of the rake and reel being at or nearly at right angles with the grain-platform, and the arms of the rake and reel not sweeping over the frame on which the driver is located, so as to interfere with the driver on his seat, substantially as described.

"18. The combination of a central shaft, a revolving hub or crown-wheel, a cam and hinged rake and reel arm, which are bent or curved near the hinging ends, as described, whereby the rake and reel arms, although hinged in rear of the cutting apparatus, are capable of reeling in and raking off grain at the inner front corner of the platform, as well as at the outer front corner thereof, and whereby, also, these arms are caused to incline over toward the grain side of the platform, when they rise to their greatest altitude, substantially as described."

Examination of these claims at once suggests, not only that they are largely repetitions, but that, if accepted in their broad generality, they are liable to two criticisms. They are very largely claims to a result which is not, per se, patentable; or, secondly, they are, most of them, in their terms, broad enough to cover any and every mode or means by which certain specified advantages, or alleged advantages, in the construction of a combined raker and reeler can be secured, which is too broad to be sustained. If this construction of the claims is to be avoided, it must be by construing the claims in the light of the previous specification, and modified by the words in each claim, "substantially as described."

By this view of these claims, they must be held to be either for the specific combination of the devices employed, described in the specification, or for the location of the devices in the place designated, with such changes, if any, as were devised to adapt the apparatus to that location.

In view of the disclaimers contained in the specification, and the description and office of the devices therein described, I am of opinion that one or both of the constructions last named is all that can be asserted in support of the claims, considered apart from the evidence, and upon the face of the patent itself. And when the evidence showing the state of the art is considered, in connection with the specification and its admissions, these restrictions of the several claims seem to me inevitable, if they can be sustained at all.

The testimony and the language of the claims, and especially the argument of the counsel for the complainant, show that the chief feature in the alleged invention of the patentee is the location of the apparatus. The counsel for the parties do not agree as to the construction of the patent in this respect. The counsel for the defendants insists that the patentee is restricted to a location below the top of the driving wheel of the principal machine, and within the limits of the circumference of that wheel; and in behalf of

the defendants, it is insisted that the patent includes any location which is nearer the ground than a horizontal plane passing through the top of such driving-wheel.

But in either view, location is a chief feature in the complainant's claims. This, of course, suggests the question: Is the mere location of devices, such devices not being new, patentable? To this the answer must be that it is not. If the result is the same, and nothing new is required to adapt an apparatus to operate in its new location, nothing has been done which can be called invention. If such change of location produced a new combination of devices, producing a new result, then, indeed, something patentable may have been devised; but mere change of location is not invention.

On the other hand, where change of location involves the employment of new devices to adapt an apparatus for use in the new position, and a beneficial result is produced, then this location, in its connection with such new devices—that is, the means by which the result is produced, and not the result itself—is patentable. And where such change of location brings into existence a new combination of devices, operating by reason of such new combination to produce a new and useful result, such new combination is patentable. But in the former case there is no infringement, unless the new devices, or their equivalent, are used; and in the latter there is no infringement, unless all the material parts of the combination are used, or their equivalents.

In the present case the complainant's specification itself declares that a continuously revolving rake and reel is not new; that a continuously revolving rake and reel, mounted on an auxiliary frame within the draft-frame, or upon the rear right-hand corner of the platform, are not new, though revolving around a vertical center; that a continuously revolving rake and reel on such auxiliary frame within the draft-frame, having its arms separately hinged, is not new; that rake and reel arms which, during their united revolution around a vertical shaft, are turned up by segments, are not new, but have been mounted on a standard or post of the platform. This latter statement describes with great accuracy, though in general terms, the defendant's apparatus now claimed to infringe the complainant's patent. It also declares that a pair of arms has been formed by uniting the two parts which form the pair in such a manner that these parts form a stiff and non-adjustable right angle, and that a continuously revolving combined rake and reel has been combined with a driver's seat so that the driver would ride on the machine.

It further declares that the patentee does not claim a single rake-arm revolving around a center, nor broadly a rake and reel combined, which is composed of a series of rake and reel bars arranged around a center, nor a series of such arms hinged independently to the hub, nor a series of such arms hinged to a horizontal shaft, in which particulars he again describes the series of arms and rake used by the defendants, which are not only hinged independently of each other, and without any linked connection in pairs, but their relation to each other is non-adjustable. And, finally, he does not claim all cams in connection with such arms for producing or controlling their motion.

I find from the evidence a prior revolving-rake combined with reel-bars revolving around a vertical shaft hinged at the center, turned by a crown-wheel, acted on by a bevel-wheel connected with the main axle of the driving-wheel, and having the rake and reel arms in pairs, connected or linked crosswise together, so that each linked pair formed a right angle, or nearly so, and so that when the rake-head or reel-bar of one pair is horizontal, the other or fellow thereto is vertical, or nearly so, and in the construction or arrangement of which an elliptical curve or segment was placed around and partially over the crown-wheel, so that in the revolution of the arms they are successively lowered and held down by the linked connection, to perform the office of reeling and raking from the platform, and then raised to nearly a vertical position until again lowered to perform their office.

All this appears in the machine of Whitenack, of which a model is produced, and which was in actual public use prior to the alleged invention by the complainant.

I find also what, after the concession in the complainant's specification, might have been assumed without further proof, that the elevation of the arms, as they left the platform in their ascending revolution, enabled the driver to sit in his proper seat on the main frame while the apparatus was in motion.

Hinging the arms of a revolving rake and reel at the center of their motion had been done before in other machines; raising them in the course of their revolution by means of a cam or an equivalent to the cam, also appears in Mears' machine, in which the revolving raking device was located on the platform, below the plane of the top of the driving-wheel, and the like device appears in McClintock Young's machine. Both of these had the arms hinged at the center of motion, were revolved by means of a crown-wheel and beveled gear-wheel, not, as in the complainant's machine, attached to or operated directly by the revolving axle of the driving-wheel, but mediately through a flexible connection therewith. In these respects the defendants' apparatus more nearly resembles them than it does the complainant's; and what are called boxes, constituting hinges in which the arms were pivoted or hinged to the crown-wheel—referred to in the seventh claim—were neither new in

themselves nor as hinges for the arms of a revolving rake and reel.

Under these circumstances, little remained which the complainant could claim as new, except the location and such specific devices as adapted the apparatus to operate in its new location, or such combination as resulted from the change of location, if any new combination was produced, and new location, or the result of the new location, was mainly urged by the counsel for the complainant on the hearing.

The location described by the complainant is upon the main frame and upon the grain side thereof, over the axle-box of the driving-wheel. The new devices which he seems to have employed to operate the apparatus in its new location, so far as any of the parts were new, were bending the revolving arms; and, what he states as his preference, casting the inner segment or axle-box of the driving-wheel and the upright vertical shaft upon which the crown-wheel (to which the arms are hinged) revolves in one piece; and, viewed as a combination, these features are included with the other parts of the apparatus already referred to.

It is true that the patentee, in his specification, says: "I have laid importance to the location of the rake and reel directly over the axle of the drive-wheel; and, while I regard this an important feature of my invention, I do not wish to limit myself to this location, where my other improvements in the combined rake and reel are found useful in other locations."

This language must be construed with reference to the entire specification and to the state of the art already adverted to.

Apart from the change of location specifically named, and the devices to operate the apparatus there, there were no improvements which were new. He points out in his specification no mode of operating the machinery in any other location. By elongation of the axle of the driving-wheel it would project the bevel-wheel and the crown-wheel to a greater lateral distance from the side of the driving-wheel, so that the latter would not be directly over the axle; or, by placing it on either side, forward or back of the axle, but adjacent to the bevel-wheel on the axle, it would still be operated by it, and yet not be directly over such axle.

That the specification contemplated a location upon or firmly attached to the frame of the principal machine, and contemplated no other location, is, I think, clear, from the specification and from other considerations. Within that range, although the patentee pointed out no mode of operating it except where he placed it, he may have contemplated location, not "directly over the axle of the drive-wheel," as I have above suggested. Still more clear it is that he did not conceive or contemplate, as within the purview of either his specification or claims, a location on the grain platform. That location he, in terms, condemns as of doubtful practicability, and in nowise suggests the possibility of placing his alleged invention there. Such rigid attachment to the main frame was alone contemplated, as I think, is clear. The details of the specification show it, wherein he proposes and prefers to cast the segment or axle-box of the driving-wheel and the vertical shaft of the crown-wheel in one piece; not that it must be so cast, but when the location is directly over the axle, he prefers it, though when placed elsewhere within the reach of the bevel-wheel it may not be possible.

The cam, which is to raise the arms in their revolution, "may be bolted firmly to the inner side timber or part of the draft-frame, as represented in fig. 1," and no other mode of securing it is pointed out or suggested. If it be said that this secures him against the use of any equivalent mode of securing it, it nevertheless indicates its firm attachment to the main frame.

His further language is still more specific, and altogether unequivocal. "I also think I have made an important improvement in being able to adjust the combined rake and reel by the same means which adjust the cutting apparatus. This end I have attained by having the rake and reel a fixture with the draft-frame, and locating it with reference to the drive-wheel, as shown."

It was hardly possible for him to be more explicit on this point. The alleged invention of the complainant was made for a one-wheeled machine. The machine which he described was a one-wheeled machine. Such a machine necessarily had its platform rigidly attached to the frame of the machine. This, it is true, would not be a conclusive fact if an infringer could have placed the same apparatus on the side of, or attached it as a fixture to, the draft-frame of a two-wheeled machine, and that would be possible if the platform was rigidly attached thereto. But it is, nevertheless, a fact of some significance, where the patentee claims that the defendants infringe by the location of an apparatus, embracing similar features not new, on the platform of a machine, such platform being flexibly connected with the principal machine and the location being where the use of the apparatus, arranged as the patentee describes it, is impracticable.

If attention be paid to what may be claimed to be the specific devices by which the patentee adapted the apparatus to the location described, or to what may be claimed to constitute in that location a new combination (if, in fact, there was any new combination), I must find that the defendants have not used them, or any of them, in the designated location; nor, in fact, have they used any of which the complainant had acquired any monopoly or exclusive right, either by the evidence or by the declaration of the paten-

tee in the specification. Some are shown to be old, both as separate devices and in combination. Others are unlike the complainant's in their structure and mechanical operation.

There are many other particulars embraced in the argument in behalf of the defendants, upon which, though I do not disaffirm them, I express no opinion. What I have said seems to me to render it necessary to add that the defendants infringe no right secured to the complainant.

To hold otherwise would be to give the patent a construction which would render the patent itself invalid, or, on the other hand, to give it an interpretation, which, in view of the language of the specification, the state of the art, and the evidence in the case, it does not bear.

I add, moreover, without going into the details of the testimony and proofs, that the defendants have used nothing which they were not at liberty to use. In some of the details, their specific devices may, where they differ from the complainant's, be new. They have adapted known devices for raking and reeling, to use, in a location upon the platform of a reaper attached by flexible connection to the frame of the main machine. If, in adapting the combined raker and reaper to the location described in his patent, the complainant Marsh made any patentable invention, if he did anything more than yield to those mechanical changes which mere judgment or mechanical necessity imposed, the defendants, in adapting their apparatus to use upon the platform of a two-wheeled machine, flexibly connected therewith, used no device of which the complainant had an exclusive monopoly.

It will be seen that the patentee neither claims nor has any exclusive right to four arms, as well because his claims are not to four or any other specific number, but to a rake and reel arm, and to two or more arms, as because one, two, and four had been previously used, and the proof shows that increasing or diminishing the number is a mere matter of judgment, not requiring invention. So, also, it should be observed, that, except in the seventh claim, the patentee makes no claim to any of the separate distinct devices used as new.

The defendants do not use the location designated. They do not use the same device for guiding the arms and bringing the rake and reel down to the platform, but a device much more nearly resembling that shown in the Mears machine. They do not use arms linked in pairs, and if the arms can be said to be arranged so that, when in motion, they assume a similar relation to each other at any like angle, that relation is fixed or unchanging, and non-adjustable. The complainant's arrangement for operating the apparatus would be impossible applied to the defendants' machine, with its platform flexibly connected to the main frame. The mode of hinging the arms to the crown-wheel is not identical with that of the complainant's mentioned in the seventh claim, and if it could be considered equivalent, it differs more than the complainant's differs from what, as before observed, was already in use. So that, in no view of the subject, can the defendants be held infringers of the complainant's patent, even if it be held to cover a specific combination, or to embrace a new location, with specific devices to adapt the apparatus to operate therein.

The bill of complaint must be dismissed, with costs.