LOVELL–McCONNELL MFG. CO. v. AUTOMOBILE SUPPLY MFG.
CO. et al.†

(Circuit Court of Appeals, Second Circuit.   June 8, 1914.)

No. 292.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—AUTOMOBILE HORNS.
    The Hutchinson patents, No. 923,048, No. 923,049, and No. 923,122, for
signal or alarm horns for use on automobiles, launches, etc., as to their
broad claims, are void for anticipation by the device of the Pierman pat-
ent.   The more specific claims *held* not infringed, if valid.

Appeal from the District Court of the United States for the Eastern
District of New York.

On appeal from an interlocutory decree entered by the District Court
for the Eastern District of New York holding valid and infringed cer-
tain claims of three patents granted to Miller Reese Hutchinson for
improvements in signal or alarm horns such as are used on automobiles,
launches, steamboats, etc.   These patents, all issued on the same day,
May 25, 1909, aggregate about 29,000 words; they contain 125 claims
and 27 illustrative figures.   The claims involved, 48 in all, are Nos. 16,
17, 19, 24, 27, 29, 36 and 37 of No. 923,048; Nos. 1, 2, 8, 12, 13, 22
and 30 of No. 923,049; and Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 13, 14, 15, 20,
21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 35, 36, 37, 38, 45, 47, 48, 52
and 53 of No. 923,122.   There are three volumes of testimony, con-
taining 2,770 pages.   This cumbersome record, imposing, as it does,
an immense burden upon counsel and upon the court, has for its ob-
ject the elucidation of an alarm horn of comparatively simple construc-
tion.   It is said that this expanding of the record is largely due to the
fact that the major part of the testimony was taken under the old eq-
uity rules.   It is hardly probable that under the new system such a
record could be produced.   After endeavoring to follow experts and
counsel through the infinite mazes of the record, the predominant
thought left upon the mind of the court is the difficulty of discovering
the exact nature of the controversy in this wilderness of words.

The opinion of the Circuit Court on the motion for a preliminary
injunction is reported in 193 Fed. 658.   The opinion at final hearing
is reported in 212 Fed. 192.

Frederick P. Fish, C. A. L. Massie, J. L. Stackpole, and Ralph L.
Scott, all of New York City, for appellants.

George C. Dean and Drury W. Cooper, both of New York City, for
appellee.

Before COXE and ROGERS, Circuit Judges, and MAYER, Dis-
trict Judge.

COXE, Circuit Judge.   The peculiar merit of the Klaxon horn seems
to be that it is capable of making a more strident, insistent and insolent
noise than any which has preceded it.   The sound has been described
in this, and previous litigation, as "harsh," "raucous," "horrible," "dia-

bolical" and "villainous." There can be no doubt that these adjectives are more or less applicable. Why it was thought necessary, with the musical and merry notes of the coach horn and the hunter's horn as guides, to mar the pleasure of automobiling and shiver the air with such discordant sounds, the court has been unable to understand. However, as both parties are almost equal offenders in this regard, it is unnecessary to dwell upon this phase of the case, further than to say that the ideal auto-horn has yet to be invented.

The first patent in suit, No. 923,048, has for its object the production of a signaling or alarm horn capable of using as much power and of producing as loud a sound as may be desired by means of simple, strong and reliable combinations. This is accomplished by the mechanical vibration of an elastic diaphragm which, when divorced from technicalities and terms of art, does not seem to be a particularly difficult object to accomplish. A ratchet wheel revolving on the upturned bottom of a tin pan would probably produce a somewhat similar result. We entirely agree with the statement in the brief of the appellee that:

"The 'horn or resonator' of the patent has been the subject of discussion out of all proportion to the simplicity of the subject."

And this is true whether the diaphragm is agitated by a cam or by a crank and link arrangement. The gist of the invention, from the appellee's point of view, is stated in its brief as follows:

"It is with the bodily diaphragm-movements that this case has to do; and the issues are further limited to the 'part-positively-forced and part wholly-free' movement of an elastic diaphragm."

In other words, the diaphragm must be elastic, it must be held in place at its periphery by clamps, and, when struck at or near its center, it must vibrate; the movement in each vibration being initiated by great force and completed under the natural conditions of the diaphragm.

The construction shown in Fig. 9 of the drawings illustrates the Hutchinson improvement in its simplest form. The diaphragm is here shown as agitated by the disk having cam projections arranged to engage suitable surfaces on the diaphragm which displace it in one direction without the necessity of a separate reciprocating member. The abrupt faces on the back side of the cam allow the free elastic return of the diaphragm at its own natural rate, thus permitting a lost motion engagement. The drawing shows a disk having two cams, but the description says that:

"The periphery of the disk 15 may be greatly increased and the number of cams greatly multiplied."

The patent to A. N. Pierman for an alarm is, we think, the best reference produced by the defendants. It was applied for August 18, 1898 and was granted March 14, 1899, ten years prior to the Hutchinson patents in suit. Pierman had in view the same object as Hutchinson, namely:

"To provide a simple, inexpensive, easily attached and loud-sounding alarm adapted for general use, but more especially for vehicles, as bicycles; and my invention consists, essentially, in the combination, with a point or button carried by a resonant diaphragm, of a transversely corrugated wheel whose periphery engages the point or button."

This patent is criticised because the description occupies "less than a single page in length." But for his brevity and conciseness in this regard the patentee should, we think, be commended rather than criticised, for in this single page he has made his invention perfectly clear. His horn is shown attached to a bicycle. He says that an essential feature of the alarm is a resonant diaphragm which may be made of metal or any suitable material having "at its center a hard point or button" which contacts with a corrugated wheel revolved by the bicycle wheel which vibrates the diaphragm and so produces the alarm. Hutchinson says:

"I make the diaphragm of any desired diameter and thickness and of * * * soft iron, spring steel, wood, etc. * * * having a suitable surface 55 on the diaphragm 5 to forcibly displace the latter in one direction without the necessity of a separate reciprocating member."

An enlarged resonator, which appears to us to be fairly made after the Pierman model, is in evidence and seems to possess all the essential features of the Hutchinson horn although, perhaps, the peculiar snarl which terminates the Klaxon note is wanting. It should be borne in mind that the patents in issue are not for "a noise." A noise, as such, is not patentable and if it be considered at all, as throwing light upon the mechanism, it must be admitted that the Newtone note resembles Pierman's rather than Hutchinson's. We have no doubt that the Pierman horn is an operative device. Pierman's first claim is as follows:

"1. An alarm comprising a resonant diaphragm having at its center a hard point or button, a transversely corrugated or roughened wheel adapted to be engaged by the said point or button to produce vibration of the diaphragm, and a movable case in which said diaphragm is mounted and with which said wheel is connected so as to be movable with said case when the alarm is moved into or out of operative position."

Hutchinson certainly has an alarm comprising a resonant diaphragm. He has at the center of this diaphragm a hard point or button (Figs. 9, 55). He has also a transversely corrugated or roughened wheel (the cam wheel) adapted to be engaged by said point or button to produce vibration. He has also a case in which said diaphragm is mounted and with which said wheel is connected (Fig. 1) so as to be movable, etc.

It is also true, we think, that Pierman's alarm if made for the first time to-day, would infringe the Hutchinson claims. Having been made before, it anticipates. Take, for instance, the first claim of patent No. 923,048 which is here involved. It is No. 16 and is as follows:

"In an alarm or signaling apparatus of the class described, a horn or resonator and a diaphragm, in combination with a rotary member and diaphragm actuating means actuated thereby and adapted to positively displace said diaphragm in one direction and then to permit elastic movement thereof, and high-speed means for driving said rotary member at such rate that the

displacements and the elastic movements correspond to a frequency of said horn or resonator."

Pierman's horn is unquestionably an alarm or signaling apparatus. It has a horn or resonator and a diaphragm in combination with a rotary member. It has a diaphragm vibrating means actuated by the rotary member and adapted positively to displace the diaphragm in one direction and permit the elastic movement thereof. It also has high-speed means for driving said rotary member at such rate that the displacements and the elastic movements correspond.

We do not overlook the criticisms made at the argument and in the appellee's brief, but it must be remembered that Pierman was dealing with the situation as it existed in 1898—16 years ago, when bicycles were largely in vogue and before the automobile industry had increased to such enormous proportions. If he had made his improvement ten years later he would probably have shown it in connection with an automobile or would have suggested the few simple mechanical changes necessary, if used in that environment. The criticism that Pierman does not distinctly show a corrugated wheel is not, in our judgment, well founded. Fig. 3, for instance, shows a diaphragm very similar to that of Hutchinson having at its center a hard point or button which is clearly an equivalent for the "suitable surface" of the first patent in suit, and which engages the corrugations on the wheel and carries the sound-producing vibrations on the diaphragm. The language of the specification is so plain as to leave little doubt as to the nature of the invention. How could it be stated in more perspicuous language than the following:

"My invention consists, essentially, in the combination, with a point or button carried by a resonant diaphragm, of a transversely-corrugated wheel whose periphery engages the point or button"?

Again, Pierman says:

"The roughened wheel receives motion from the bicycle-wheel, and the corrugations of the wheel are engaged by the point or button carried by the diaphragm, thereby imparting vibration to the diaphragm and producing the alarm, which I find in practice will be heard at a much greater distance than bells and other alarms commonly in use."

We cannot resist the conclusion that all that Hutchinson did was to take the old resonators and connect them up with a rotary electric motor, thereby producing a more startling sound, but adding nothing patentable to the signaling apparatus.

Gieseler in 1900 discloses in his patent No. 21,084 an apparatus very similar to that described in the claim under consideration. Fig. 7 shows a diaphragm clamped at its circumference at the lower end of the horn and made to vibrate by contact with a circular disc having a corrugated edge, which is the equivalent of twelve undulating cam surfaces. These cams actuate a spring-held hammer which is thus made to tap the disc at the lower end of the horn.

Hope-Jones, in 1901, produced an improved apparatus for producing sound and obtained a patent therefor. He shows a diaphragm vibrated by a rotary electric motor. There are other patents in the record show-

ing various elements of the claims in suit, alone or in somewhat similar combinations, but it is unnecessary to consider these further as they add nothing essential to the Pierman disclosure.

Our general conclusion is that the broad claims in controversy of the Hutchinson patents are invalid and that the claims which cover specific details, if valid, are not infringed.

The decree is reversed, and the District Court is directed to enter a decree dismissing the bill with costs to the defendants-appellants.