LOVELL–McCONNELL MFG. CO. v. GARLAND AUTOMOBILE CO.

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

No. 129.

PATENTS ⊙⇒328—INVENTION—ALARM HORN FOR MOTOR CARS.

The Hutchinson patents, Nos. 923,048, 923,049, and 923,122, each for an alarm or signaling apparatus for automobiles, *held* void for lack of invention in view of the prior art.

Appeal from the District Court of the United States for the Southern District of New York.

On appeal by the Lovell-McConnell Manufacturing Company, complainant, from the final decree of the District Court for the Southern District of New York, dismissing the bill which charged the infringement of three patents granted to Miller Reese Hutchinson for an alarm horn.

George C. Dean and Irving M. Obrieght, both of New York City, for appellant.

Howard P. Denison and Eugene A. Thompson, both of Syracuse, N. Y., for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge. When these patents were before us in the action against the Automobile Supply Company, decided in June last, 48 claims were under consideration. 216 Fed. 146, 132 C. C. A. 240. In the present appeal only 5 claims are involved, viz., 17, 24 and 27 of patent No. 923,048, claim 22 of patent 923,049, and claim 47 of patent No. 923,122. They are as follows:

"Patent No. 923,048.

"Claim 17. In an alarm or signaling apparatus of the class described, a diaphragm in combination with a rotary member and diaphragm actuating means actuated thereby and designed and arranged to positively displace said diaphragm in one direction, and high speed means for driving said rotary member at such speed that the frequency of displacements harmonize with the natural elastic movements of the diaphragm."

"24. In an alarm or signaling apparatus of the class described, a horn or · resonator and a diaphragm, in combination with a rotary member means actuated by said rotary member adapted to cause bodily movement of said diaphragm on both sides of normal by positively displacing the same in one di-

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rection and then permitting elastic movement thereof, and high-speed means for driving said rotary member at such rate that the displacements and the elastic movements harmonize with a natural frequency of the device."

"27. The method of generating an alarm note of desired pitch and amplitude by means of an elastic diaphragm which comprises periodically applying and removing a positive outward thrust to said diaphragm, during its outward vibratory movements, said periodicity of application being at intervals corresponding approximately to the natural times of outward movement in the free elastic vibrations of said diaphragm."

### "Patent No. 923,049.

"Claim 22. In an alarm or signaling apparatus of the class described, an elastic diaphragm, in combination with a rotary cam adapted to engage said diaphragm, the relative position and the formation of the co-operating surfaces of engagement of said parts being such that the principal vibration of said diaphragm is a bodily movement, wholly on one side of normal and then on the other, for the purpose described."

### "Patent No. 923,122.

"Claim 47. In an alarm or signaling apparatus of the class described, a diaphragm, in combination with a rotary cam positively vibrating said diaphragm, said rotary cam being formed with a plurality of spaced cam projections, proportioned and arranged so that their operative cam faces are of small altitude as compared with the distance between their summits whereby clearance is given during rotation, together with means for rotating said cam at a speed harmonizing with the elasticity of the diaphragm, for the purpose described."

All of these claims were in issue in the former action. In that case we reached the conclusion:

That "the broad claims in controversy of the Hutchinson patents are invalid, and that the claims that cover specific details, if valid, are not infringed."

The complainant's horn is called the "Klaxon," the defendant's horn in the former case decided by us is called the "Newtone," and the horn here in controversy is called the "Sparton."

In the former case we held, in substance, that the Pierman horn, while not a complete anticipation, contained all the elements of the patented horn and needed only enlargement and adaptation to make it a suitable signal horn for motor cars, having all the characteristics of the Klaxon horn. An enlarged Pierman was produced in evidence which, when rapidly rotated, emitted a noise similar in sound and quite as effective as the warning signal of the Klaxon. The only new evidence is a series of experiments by Professor Webster tending to show that the vibrations of the Klaxon diaphragm are different from those of the Pierman diaphragm. Having so recently passed upon the questions now involved and having denied a petition for a rehearing, we cannot, of course, reverse our decision unless some new and controlling evidence is presented. Indeed, as we understand it, the complainant does not ask or expect us to do this, but contends that new and highly persuasive evidence, which is now presented for the first time, demonstrates that Hutchinson has made a highly meritorious invention. The complainant seeks to differentiate the present from the former case by asserting that:

"The infringing device is different, is less complicated, and is more like the plaintiff's."

It is also contended that the Sparton horn reproduces the qualities of the patented horn in that "good pressure" produces a warning signal which can be heard a mile away and "a light touch" produces "an inoffensive but authoritative command, warning people at close range," substantially as is done by the complainant's horn. In other words, the chauffeur does precisely what a locomotive engine driver does in like circumstances. If approaching a dangerous crossing he will give a long, sustained blast of his whistle, when a mile distant, but if he is trying to induce cattle to get off the track he will give a series of short toots, at close range. There is nothing novel in a horn, or, indeed, any signaling instrument, possessing these characteristics. The only feature which distinguishes this case from the Newtone case is the testimony of Professor Webster describing certain tests and experiments and explaining the photographic tracings taken by him of the actual movement of the diaphragms in controversy. These experiments show learning and ingenuity, and are interesting from a scientific point of view, but are too technical and refined for practical application to the present controversy.

It is an axiom of the patent law that a structure which infringes, will anticipate if made before. Applying this rule to the facts in hand, we think there can be little doubt that an enlarged Pierman horn made now for the first time and adapted for use on a motor car, would infringe. The same mechanical combination shown in the Hutchinson patents would be present and the same raucous noise would be emitted —the same cause, producing a substantially similar effect.

In such circumstances would the court listen to learned experts who attempt by ingenious experiments to show that the pulsations of the diaphragm are more numerous and prolonged in the one case than in the other? Science says these vibrations, from 300 to 500 per second, are not the same in the Pierman and Hutchinson horns and this discovery demonstrates the superiority of the horn of the latter over that of the former. Common sense replies, True, but we are not dealing with scientific refinements, but with practical results, and Pierman shows how to produce these results, by mechanism which, in principle and mode of operation, is the exact counterpart of that of Hutchinson. Their diaphragms may differ in size and material, the wheels may have more or less teeth, but the object is the same, the result is the same, and it is accomplished by substantially the same mechanism. The Pierman horn anticipates because it was made before Hutchinson's horn. If made now for the first time it would infringe.

Assume that the patent in controversy is for a repeating rifle, and that the defense is that the same combination had been previously used in a pocket pistol. Would the court reject proof of this defense because it was shown that the discharges were more frequent and the bullets carried a less distance in the smaller than in the larger gun? In short, we think the test proposed by the complainant too technical for practical adoption in patent cases. It would, if permitted, enable the patentee to contend successfully that, although his combination is shown in the prior art, he is entitled to a monopoly because he uses better materials, because his machine is on a much larger scale and is

more scientifically constructed than the one which preceded it. Conceding all that Professor Webster says to be true, we do not think it requires a modification of our former decision. If all the new testimony had been in the former record the result would have been the same.

The decree is affirmed with costs.