LOVELL–McCONNELL MFG. CO. v. ORIENTAL RUBBER & SUPPLY CO.

(Circuit Court of Appeals, Second Circuit.   February 29, 1916.)

No. 131.

1. PATENTS ⬅18—"INVENTION"—OBVIOUS CHANGES IN CONSTRUCTION.

The taking of two steps in changing a prior device, both obvious and not involving invention, and unpatentable when taken separately, does not involve "invention" and become patentable when taken in unison.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 18; Dec. Dig. ⬅18.

For other definitions, see Words and Phrases, First and Second Series, Invention.]

2. PATENTS ⬅26(2)—INVENTION—COMBINATION OF OLD ELEMENTS.

A combination of old elements, to be patentable, must produce a new result or effect in the combined forces or processes from that given by their separate parts.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 29; Dec. Dig. ⬅ 26(2).]

3. PATENTS ⬅328—INVENTION—AUTOMOBILE HORN.

The Hutchinson patent, No. 1,120,057, for a diaphragm horn for automobiles, *held* void for lack of invention, in view of the prior art.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in equity by the Lovell-McConnell Manufacturing Company against the Oriental Rubber & Supply Company.   Decree for complainant, and the defendant appeals.   Reversed.

For opinion below, see 225 Fed. 74.

This cause comes here on an appeal from a decree of the United States District Court for the Eastern District of New York.   The patent in suit relates to automobile horns.

Howard P. Denison and Eugene A. Thompson, both of Syracuse, N. Y., for appellant.

George C. Dean, of New York City (Drury W. Cooper and Irving M. Obrieght, both of New York City, of counsel), for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.   This is a suit brought under the patent laws of the United States for infringement of the United States letters patent No. 1,120,057.   The patent was applied for on August 14, 1914, by Miller Reese Hutchinson, and the patent was issued on December 8, 1914.   The application for the patent having been duly assigned to the plaintiff, the patent was issued in its name, and at the time this suit was brought was, and so far as we are informed still is, the owner thereof.

The inventor had on October 26, 1909, filed his original application, which is serial No. 524,762; and the patent in suit was issued upon an application filed as a division of the original application.   The invention of the patent in suit "relates to horns or signaling devices

wherein a vibratory member such as a diaphragm is actuated by power derived from a rotatory member or drive shaft, which may be the armature shaft of an electric motor."

In his prior patents, Nos. 923,048, 923,049, and 923,122, Hutchinson had disclosed various means through which movement of a rotary member might be applied to vibrate a diaphragm, so that only a part of the movement of the diaphragm was forced by the driving means, the diaphragm being permitted any desired degree of independent motion preferably on both sides of normal.

In his original application, of which, as we have seen, the application for the patent in suit was filed as a division, the patentee described an arrangement of parts whereby the vibratory motion of the diaphragm could be derived from a drive shaft, when such shaft was arranged at an angle of the plane of the diaphragm, instead of parallel therewith. This he conceived to be particularly desirable in the cases where the armature shaft of an electric motor was utilized as the drive shaft, as it permitted a compact arrangement of the motor within a case which it would not be necessary to extend peripherally outside of the circumference required for inclosing the diaphragm.

He described his invention in the application upon which the patent in suit was issued as follows:

"In the specific arrangement forming the subject of the present application, the shaft is presented endwise to the diaphragm, and is either perpendicular or at a high angle to the diaphragm, and is arranged eccentrically therewith so that its axis does not pass through the center of the diaphragm. With the latter arrangement the diaphragm may have a comparatively small wear piece at its center and presenting a straight line contact surface with which the cams on the face of the rotor may successively engage in the most effective manner and the reaction of the diaphragm on the motor may be taken up by the thrust bearing of the shaft rather than in resistance lateral movement or bending of the shaft. If the shaft be the armature shaft of an electric motor, the latter may be mounted in a casing eccentric to the diaphragm; but its size may not be so great but what it may be disposed entirely within the rearward projection of the periphery of the diaphragm.

"When the device is secured in position with the axis of the diaphragm horizontal, I preferably drop the motor down, but keep its axis in the same vertical plane as the axis of the projector. Thus the center of gravity of the device is low and the device more stable, with less strain on its support, while the projector is on a higher level, and hence somewhat better adapted to project the sound clear of any interfering substructure of the automobile."

There are 14 claims; but in the court below the suit was narrowed down to one claim. It is conceded that the maintenance of the suit depends upon the validity and infringement of claim 12. That claim reads as follows:

"12. In an alarm or signaling device, a diaphragm, a pair of opposed diaphragm clamping members, one of said members having a sound outlet opening therethrough concentric with the diaphragm and the other of said members carrying a rearwardly extending cylindrical motor casing eccentrically disposed in respect to said diaphragm a motor within said casing having its armature shaft presented endwise to said diaphragm, a wear piece on said diaphragm at the center of the latter, a face cam carried by said armature shaft and engaging said wear piece, the eccentricity of said motor casing in respect to said diaphragm being substantially equal to the effective radius of said face cam, and means for adjusting the armature shaft and rotor axial-

ly to vary the degree of overlap of the face cam projections on said wear piece."

The elements of claim 12 have been enumerated and compared with plaintiff's prior patents in the brief of counsel for appellant as follows:

| Claim 12 of Patent in Suit No. 1,120,057. | Patent No. 923,122. |
|---|---|
| 1. A diaphragm. | 1. A diaphragm, indicated by the numeral 5, and which is element 1 of claim 12 of the patent in suit. |
| 2. A pair of opposed diaphragm clamping members. | 2. A pair of opposed diaphragm clamping members, 2 and 4. |
| 3. One of said members having a sound outlet opening therethrough concentric with the diaphragm. | 3. One of said members, as 4, having a sound outlet opening therethrough concentric with the diaphragm. |
| 4. The other of said members carrying a rearwardly extending cylindrical motor casing eccentrically disposed in respect to said diaphragm. | 4. The other of said members, as 2, carrying a rearwardly extending cylindrical motor casing (concentric with the diaphragm, but no new function is performed by mounting the casing eccentric of the diaphragm). |
| 5. A motor within said casing having its armature shaft presented endwise to said diaphragm. | 5. A motor within said casing (having its armature shaft parallel with the diaphragm, but no new function is performed in placing it endwise of the diaphragm). |
| 6. A wear piece on said diaphragm in the center of the latter, a face cam carried by said armature shaft and engaging with said wear piece, the eccentricity of said motor casing in respect to said diaphragm being substantially equal to the effective radius of said face cam. | 6. A wear piece on said diaphragm at the center of the latter, a cam carried by said armature shaft and engaging with said wear piece. (The eccentricity of the casing is purely a matter of form or arrangement, and the amount of the eccentricity is purely a matter of taste or design, and the amount specified in this element of the claim is sufficient to make the motor casing fit the motor, which is the natural way any mechanic would design it.) |
| 7. Means for adjusting the armature shaft and rotor axially to vary the degree of overlap of the face cam projection on said wear piece. | 7. Means for adjusting the armature shaft and rotor to vary the degree of overlap of the face cam projections on said wear piece. (This adjustment is found in patent No. 923,-049. See Figures 4 and 8. See 81, Figure 8.) The specification, line 16, page 5, says: "The extent of this rearward movement is determined and set by adjusting screw 81 threaded into the back side of the case at 82, bearing upon 66. By these means the cam 59 may be adjusted nearer to or farther from the diaphragm cam surface 69. * * * Locking nut 82 is provided for locking screw 81 in any desired predetermined position." |

Three expressions in claim 12 defining arrangement or positions alone are not found in the prior Hutchinson patents. These expressions are:

1. "Eccentrically disposed in respect to said diaphragm" (referring to the casing).

2. "Having its armature shaft presented endwise to said diaphragm."

3. "The eccentricity of said motor casing in respect to said diaphragm being substantially equal to the effective radius of said cam."

The first defines the position of the casing as *eccentric;* whereas in patent No. 923,122 it is concentric. This, as appellant contends, is purely a matter of form or arrangement, not affecting in any way the operations of the device, nor varying in any way its functions.

The second defines the armature shaft of the motor as presented endwise to the diaphragm and provided with a face cam, whereas it was parallel with the diaphragm in patent No. 923,122. This, too, is a mere matter of form position or arrangement. The movement of the diaphragm is the same, the sound produced is the same, and the instrumentalities for producing it are identical, whether the shaft is parallel with or perpendicular to the diaphragm.

The third defines the eccentricity of the casing as being equal to the effective radius of the cam. The eccentricity of the casing is also purely a matter of form or arrangement. The amount of eccentricity in no way affects the operation of the device.

The comparison already made of the horn of the patent in suit with the horn of the prior Hutchinson patents discloses that the motor shaft of the old "Klaxon" horn of the earlier patent has been turned up to a horizontal position so that the cam wheel will engage the wear piece on its face rather than on its edge. This is well shown in the following drawings:

Right Angle "Klaxon" Horn.    Same with Motor Shaft Turned up.

There has been a rearrangement of exactly the same elements found in plaintiff's prior patents. Hutchinson's prior patents show a cam operated horn with an adjustable impact. They also indicate an electrical motor for sounding the horn. Later it occurred to Hutch-

inson that it would be simpler and better to adjust the armature shaft which carried the diaphragm, the actuating device.

[1] 1. Hutchinson changed the arrangement of the prior patents by turning up the motor from a parallel to a perpendicular position relative to the diaphragm; (2) he then provided the armature shaft with an adjustable and thrust screw, not as a part of the motor, but as a part of an outer case, and left the armature shaft loose in the case, so that he could adjust the cam towards the diaphragm with the end thrust screw. The first step, that of turning up the motor to a perpendicular position, was obvious; and after the first step was taken, the second step, that of providing the motor when turned up with means for adjusting it to vary the position of the cam with respect to the diaphragm, was also obvious.

The patent in suit contemplates no new function and accomplishes no new result. No new sound is produced. The substitution of a face cam for a rim cam is not a matter of importance. The two structures are merely mechanical equivalents. And this court is not prepared to hold that the taking of two steps, both obvious and not involving invention, and unpatentable when taken separately, involves invention and becomes patentable when taken in unison.

[2] It is, of course, true that invention may consist in the combination of old elements; the invention being in the combination. But the combination to be patentable must produce a new result or effect in the combined forces or processes from that given by their separate parts. The language of the Supreme Court in Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719 (1876) is applicable here:

"The combination, to be patentable, must produce a different force or effect, or result in the combined forces or processes, from that given by their separate parts. There must be a new result produced by their union; if not so, it is only an aggregation of separate elements."

And in the same case the court declared:

"The law requires more than change of form, or juxtaposition of parts, or of the external arrangement of things, or of the order in which they are used, to give patentability. Curtis on Patents, § 50; Hailes v. Van Wormer, 20 Wall. 353 [22 L. Ed. 241]. A double use is not patentable. * * * Curtis, §§ 56, 73. An instrument or manufacture which is the result of mechanical skill merely is not patentable. Mechanical skill is one thing; invention is a different thing. * * * The distinction between mechanical skill, with its conveniences and advantages, and inventive genius, is recognized in all the cases."

In the Hutchinson patent No. 923,122, no provision was made for securing an adjustment. But such a provision appears in his patent No. 923,049 in which there is disclosed a hinged bracket, whereby the cam and flexible driving shaft might be adjusted parallel with its own axis, not endwise thereof. The adjustment could not be applied to the motor-driven horn without pivotally supporting the motor and swinging the entire motor about its pivotal support each time an adjustment was made.

[3] In the patent in suit the claim is that Hutchinson has so designed the construction as to avoid the movement of the entire motor in adjusting the cam; that the adjustment does not involve any move-

ment of the body of the motor, and only involves an axial sliding of the armature shaft in its bearings, which are a part of the motor. It seems necessary, in our opinion, that this claim should be established, if any invention is to be found in this patent. The defendant has strenuously denied that the adjustment of the armature shaft through the motor and without movement of the body of the motor is possible in the plaintiff's structure. The defendant insists that the degree of overlap of the cam upon the wear piece of the defendant's horn cannot be adjusted by a movement of the armature shaft through the body of the motor, and that it is only accomplished by a movement of the entire motor itself, as in the case of the prior Hutchinson patent. This court has reached a like conclusion. The plaintiff appears to have adopted the difficult rôle of blowing hot and cold at the same time. To establish novelty and patentability, plaintiff advanced the theory that the patent in suit provided for an adjustment of the armature shaft through the motor and without any movement of the body of the motor. But to make out infringement by the defendant, plaintiff reversed its position, and urged that the patent in suit included a construction in which the adjustment is obtained by a movement of the entire body of the motor. If that be the case, the patent in suit includes the adjustment of the prior patents, in which the entire motor is moved to accomplish the adjustment, and covers the very feature which the patentee says he made the invention to avoid. This certainly would make his patent invalid.

Other models of Hutchinson cam-actuated motor-driven horns have been before this court in previous litigations. In Lovell-McConnell Mfg. Co. v. Automobile Supply Mfg. Co., 216 Fed. 146, 132 C. C. A. 240 (1914), the Hutchinson patents, Nos. 923,048, 923,049, and 923,122, for alarm horns on automobiles, were before this court, and as to their broad claims were held void for anticipation by the device of the Pierman patent, granted on March 14, 1899. And the more specific claims were held not infringed. In that case 48 claims were involved. The same Hutchinson patents were again before this court in Lovell-McConnell Mfg. Co. v. Garland Automobile Co., 221 Fed. 634, 137 C. C. A. 358 (1915), and on that occasion only 5 claims were involved, and they were held void for lack of invention in view of the prior art. The plaintiff's horn in the first and second suits was called the "Klaxon" and defendant's horn in the first case was the "Newtone" and in the second case was the "Sparton." The present patent covers what is alleged to be an improvement upon the "Klaxon" of the earlier patents. We have no knowledge as to the time when it occurred to Hutchinson to make the changes he made in the present patent. But the attention of the court has been called to the filing date of the application and that it was about five years after the original filing date. It is suggestive, too, that the application was filed very soon after this court handed down its decision in Lovell-McConnell Mfg. Co. v. Automobile Supply Mfg. Co., supra. That decision was filed on June 8, 1914, and two months later, on August 14, 1914, the appellant divided the original application, which he had filed on October 26, 1909, and filed his divided application for the patent in suit. Counsel for appellants say in their brief:

"That it is high time the courts took notice of this practice on the part of the plaintiff's in attempting to ruin competitors and drive them out of the market by patents which have been allowed to remain in the Patent Office for years, and until others, with plaintiff's full knowledge, have built up a business and have large vested rights."

No attempt to ruin a competitor's business or to drive it out of the market by malicious or unfair and unlawful dealings can hope to succeed in a court of justice. No court will be astute to aid an enterprising patentee in an undertaking of that sort. We do not intend to reflect upon the conduct of the particular patentee in the case at bar. He has done nothing unlawful. And we have no evidence that his conduct has been malicious. But a patent issued under the circumstances which attended the issuance of this one, and indeed any patent the validity of which is challenged, will be closely scrutinized for the protection of the public against a monopoly not authorized by the law. The patent in suit fails in this case, as did the prior patents in Lovell-McConnell Mfg. Co. v. Garland Automobile Co., supra, because of lack of invention.

Decree reversed.

Judge LACOMBE heard the arguments, participated in the consultation, and indicated concurrence in the conclusions above expressed, but did not see the text of the opinion.