FIZZELL v. LOURIE MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1917.)

No. 2194.

PATENTS 328—VALIDITY AND INFRINGEMENT—TIRE SETTER.

The Henderson & Lourie patent, No. 933,834, for an edge-grip tire setter, was not anticipated, and discloses patentable invention and utility; claims 2, 3, and 5 also *held* infringed.

Appeal from the District Court of the United States for the Southern Division of the Southern District of Illinois.

Suit in equity by the Lourie Manufacturing Company against Robert Fizzell. Decree for complainant, and defendant appeals. Affirmed.

Taylor E. Brown, of Chicago, Ill., for appellant.
W. Clyde Jones, of Chicago, Ill., for appellee.

Before MACK, ALSCHULER, and EVANS, Circuit Judges.

MACK, Circuit Judge This is an appeal from the decree of the District Court, granting an injunction and accounting for the alleged infringement of claims 2, 3, and 5 of letters patent No. 933,834, granted September 14, 1909, to Henderson and Lourie, on an application filed January 17, 1906, for an edge-grip tire setter. These claims are as follows:

"2. In a tire setter, the combination of gripping blocks provided with means for engaging the edge of the tire, and means for yieldingly supporting the blocks to conform to the curvature of the tire; said means comprising a yielding support on which said blocks rest and adapted to be engaged by the tire."

"3. In a tire setter, the combination of gripping blocks provided with means for engaging the edge of the tire, and a plate on which the blocks rest with their rear ends; said plate being yieldingly supported and adapted to be depressed by the tire to adjust the blocks to the curvature of the tire."

"5. In a tire setter, the combination of a frame, a stationary head block secured thereon, a second head block movable on the frame, gripping blocks movable in said head blocks, a hydraulic press mounted upon the frame and provided with a piston rigidly connected with the movable head block, means for moving each pair of gripping blocks in unison and relatively to their respective head blocks, and means adjacent to said means for moving the gripping blocks whereby fluid is forced into said hydraulic press to impart movement to said head blocks."

---

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The following drawings will assist in the understanding of the issues:

Various methods are used for setting steel tires on vehicle wheels, the object of all being to contract the circumferential length of the tire, so that it will firmly grip the felloe of the wheel and be securely held there by friction. The oldest method, and one which is still in limited use, is hot setting by hand. This consists in removing the tire from the wheel, reducing its diameter to the desired length by cutting out a piece, welding its ends together, and heating the tire so that it may be slipped over the felloe. As the tire cools, it contracts and grips the felloe firmly.

The oldest method of setting tires by machine is the face-grip method. This process does away with the necessity for cutting and welding. The tire is removed from the wheel and usually heated at a point on its periphery. This heated portion is clamped between jaws, which grip the tire on its inner side or face, and which are forced towards each other by mechanical means, so as to upset or compress the metal between the two sets of jaws.

More recently cold-setting machines capable of setting the tire while on the wheel have come into use. These machines are of two sorts, edge-grip and full-circle. In the latter, the upsetting mechanism, consisting usually of hydraulically actuated cylinders, is applied radially at a plurality of points on the tire, so that the inward motion of the pistons compresses the tire and causes it to fit the felloe snugly. As these full-circle tire setters are large in size and comparatively expensive, they are used chiefly in wheel factories and are found in only a few larger blacksmith shops.

The machines of the edge-grip type, to which the patent in suit belongs, are simpler and less expensive. The upsetting occurs at one place only, and is produced by two pairs of gripping jaws, which engage the edges of the tire, and which, when moved toward each other, cause the tire between the two pairs of jaws to be compressed or upset, so that its circumferential length is reduced, with the result that it will fit more closely about the felloe.

"The object of the invention" in suit, according to the specifications, "is to so construct an edge-grip tire setter that it can be operated by hydraulic pressure. A further object is to provide improved means for adjusting the gripping blocks, so as to conform to any shape and diameter of the wheel." The machine, as described in the specifications, consists of two blocks or heads, a fixed head *2* and a movable head *3*, mounted on a frame. These heads are spaced and held apart by a coiled spring *14*. To allow tires to be set firmly in the machine, the head blocks are provided at either side with projecting jaws *18* and *19*. The oblique inner edges of each jaw incline towards each other and towards the outer ends of the heads, so that they form a converging channel. In this channel is inserted a pair or set of gripping blocks or jaws *20*, which are wedge shape and adapted for engagement with the beveled inner surfaces of the projecting jaws. When the gripping jaws are moved longitudinally outward with respect to the head block on which they are mounted, they will be forced inwardly on account of the oblique surfaces of the projecting jaws, and the teeth on the gripping jaws will engage the edges of the tire. This longitudinal movement,

with its resulting lateral movement, is effected by means of levers *22*, fulcrumed in each of the heads and provided with upright jaws *22a*, which engage with pins *23* on the under side of the gripping blocks. Each lever is adapted to operate one set of gripping jaws, so that each set will move in unison upon the head which supports it.

The inner ends of the gripping blocks rest on, the plate *17*, which bridges the gap between the two head blocks; the outer ends rest upon a transverse bar *24*, which is supported by a U-plate *26* attached to the upper end of a yielding spring-controlled bar *25*. When a wheel is placed in the machine between the gripping blocks, it will rest at its bottom or lowermost point upon the supporting plate; while the rising arc of the tire will strike the bar *24*, forcing it down until the arc of the gripping jaws substantially coincides with the arc of the tire, so that the teeth on the jaws will properly grip the tire. After the gripping blocks have thus been adjusted to the curvature of the tire, and, by means of the longitudinal or wedging action above described, brought into preliminary gripping engagement therewith, the movable head block *2* is drawn towards the stationary head block *3* by hydraulic force.

A hydraulic press, consisting of the cylinder *4* and piston *6*, is mounted upon the frame. The piston *6* is provided with the cross-head *7*, which is connected with the movable head by parallel rods *9*, placed at each side of the heads *2* and *3*, and extending through sleeves on the side of each head. Liquid for operating the press is obtained from the tank *51*, which is connected by the transversely arranged cylinder *39* and the passage *41* with the cylinder *4*, in order that the liquid may be admitted back of the piston *6* so as to drive it forward. This forward action is communicated through the cross-head *7* and the rods *9* to the movable block, which is thus drawn toward the stationary head. The pressure required to drive the liquid into the cylinder *4* is afforded by means of a screw piston *42*, *44*, operated by a crank arm *47*, or by a ratchet arm *50*, both of which are placed near or adjacent to the levers *22* so that one operator can conveniently operate both.

The machine used by the defendant and manufactured by the Keokuk Hydraulic Tire Setter Company, which is alleged to infringe the patent in suit, is of the same general type and style as the patented machine. It is an edge-grip tire setter with a movable head block *3* and a stationary head block *2*, with hydraulic means of drawing the heads together, with gripping blocks *10*, *11*, mounted upon the heads and capable of a wedging movement therein and of adjustment to the curvature of the tire to be upset. The machines, however, are not similar in all respects. The adjustment of the gripping blocks to the periphery of the tire in the defendant's machine and the preliminary gripping of the tire is effected in a somewhat different manner. The gripping blocks do not rest directly on the head blocks, but are mounted on plates *30*, there being one such plate for each set of gripping blocks. Unlike the patent in suit, in which the outer ends of the gripping blocks are normally held up and are depressed to fit the curvature of the tire, in the defendant's machine, the outer ends of the blocks must be raised in order to conform to the arc of the tire; while, in the patented structure, the outer ends of the blocks are depressed by the

weight of the wheel, in the defendant's machine they are elevated by the vertical plungers *27*, which slide vertically within the tubular setting levers *26*, and are adapted to be forced upward by the foot lever connections *25*, *22*, and *24*. The effect of the foot pressure upon the bar *24* will be, first, to raise the gripping jaws to fit the arc of the tire, and, second, after the downward pressure of the wheel resists further vertical motion, the setting levers *26* will begin to move, their lower ends being drawn together and their upper ends cast apart. This longitudinal movement of the upper ends of the setting levers carries each of the plates *30* with the set of gripping blocks that rests upon it outward, and thus produces the wedging action by which the initial gripping of the tire is effected.

The position of the movable and stationary head blocks in reference to the location of the hydraulic press is reversed on the defendant's machine. The cylinder of the hydraulic press is mounted on the end of the frame opposite the end of the frame which carries the fixed block. A filler block is interposed between the piston *P* and the movable head block *3*. When the hydraulic fluid is admitted into the cylinder in which the piston moves, the piston, the filler block, and the movable head are caused to move toward the fixed head, with the result that the distance between the two heads is reduced and the upsetting of the tire thereby brought about. Although the piston is not physically connected with the movable block, mechanically the two move together just as they would if they were so connected. A plunger pump is used on the defendant's machine in place of a screw displacer pump.

The defendant assails the validity of all these claims in view of the prior art as evidenced by the patents adduced and the prior public use of the West hydraulic edge-grip tire setter, and denies infringement, if the claims should be deemed valid. Claims 2 and 3 are essentially subcombinations; the vital feature is the means for yieldingly supporting the gripping blocks or the plate on which their outer ends rest, so that they may readily adjust themselves to the arc of the tire. This is a conception involving invention and utility. Is it novel in view of the prior art and use? Several prior patents show means for manually adjusting the gripping blocks to the periphery of the tire by the insertion and advancement of wedge-shape blocks beneath them. Such adjusting means requiring the operator consciously to determine the extent of the adjustment clearly do not constitute an anticipation of the patented structure, in which the supports of the gripping blocks, yielding to the downward pressure of the wheel, automatically—that is, without any conscious directive effort on the part of the operator—cause the curvature of the blocks to conform substantially with the curvature of the tire.

The defendant's attack on the novelty of the invention is based chiefly, however, upon the public use of the West machine. Each of the four gripping jaws of the West machine has a spring applied to hold its outer end normally, but yieldingly, elevated. While the West machine, therefore, does possess yieldingly supporting means for its gripping blocks by which the blocks are adjusted to the periphery of the tire, it has no single support or plate for the two gripping blocks

on the same head, so that they may be raised or depressed in unison, but the vertical adjustment of each of the four gripping blocks is separate and independent.

The evidence fully warrants the conclusion that this absence of correlation in the vertical movement of the gripping on the same head is not a minor defect, but a very serious one, impairing the commercial value of the machine and destroying its practical utility. When one of the springs is weak, when its resilience is impaired by accumulations of dirt and waste, or when for any other reason one of the springs does not function properly while the other spring on the same head does, the jaws will not properly engage the tire, and the wheel will be marred. The results obtained by the use of the West machine were so unsatisfactory that it was withdrawn from the market in 1900. The want of correlation, the lack of connection between the movement of the gripping blocks on the same head, was doubtless one of the chief causes of its commercial failure.

The machine described in the specifications provides means by which the gripping blocks are not only yieldingly supported, but are yieldingly supported in such a way that the gripping blocks on each head move in unison. This is because the spring is applied not to each gripping block, but to the U-plate *26* which supports not a single but a pair of gripping blocks. This correlation of the movement of the blocks in pairs marks a distinct advance over the West machine, an advance calculated to overcome the gravest objection to automatic adjustment through yielding supports and to give commercial worth to a feature theretofore discarded as impracticable and valueless. The patentees' conception of the necessity for correlating the movement of the jaws and his provision of means for accomplishing this marked a patentable advance in the art over the West machine.

This vertical movement of the gripping blocks in unison relative to the head blocks is the necessary result of the means designated in claims 2 and 3—in claim 2, a yielding support; in claim 3, a yieldingly supported plate; in each instance, not for each block separately, but for each pair of blocks.

As to infringement of claims 2 and 3. These claims do not embody a pioneer invention. As the patent examiner pointed out, invention lies wholly in the character of the means whereby the adjustment of the gripping blocks to the periphery of the tire may be automatic. If the same result had been accomplished by the defendant by substantially different means, the charge of infringement would fail. But changes in or improvements upon the patented structure, embodying the essential features thereof, utilizing the conception underlying it, and falling within a fair range of equivalents, do not enable defendant to escape this charge. The essence of the invention in claims 2 and 3 is the yielding means by which the gripping blocks in pairs or sets are adjusted to the arc of the tire, an adjustment occasioned by the supporting means yielding to the downward pressure of the wheel.

Defendant urges that yieldingly supporting means constitute but a specific kind of automatic adjustment and that as in his view his machine is not automatic, he does not infringe. He fortifies his contention by referring to the file wrapper to show that claims for means of

automatic adjustment were rejected as being too broad in view of the prior art. Conceding his construction of the plaintiff's claims, defendant's conclusion as to his own machine does not follow. Despite the fact that a voluntary act is required initially, a process may be none the less automatic; a machine, though started by pressing a button or moving a foot lever, may none the less in its operation respond to the specification of an automatic device. The yieldingly supporting means specified in claims 2 and 3 are automatic in the sense that the adjustment results from the downward pressure of the wheel and not from the conscious and deliberate measuring by or the conscious directive effort of the operator. In the defendant's machine the operator first places his foot upon the treadle; it is, however, through no conscious directive effort or deliberate measuring on his part, but by their contact with the wheel, that the initial upward movement of the blocks ceases and the lateral and longitudinal movement begins.

If the foot pedal is pressed down before the wheel is inserted, or if a heavy pedal is used, or a weight placed upon the pedal, the gripping blocks will be lifted or elevated, so as to fit the curvature even of the smallest wheel. When a wheel is then placed in the machine, the gripping blocks will be depressed, just as in the patent in suit, so as to conform to the curvature of the tire. Counsel for the defendant themselves suggest that weights would be mere mechanical equivalents for the resilient means described in the specifications of the patent in suit. The evidence justifies the conclusion that the pressure on the foot pedal is equivalent to a weight. It is to be noted that the support in claims 2 and 3, while yielding, is not, as in other claims, elastically yielding; it is not limited to a spring yield. While at first blush defendant's method of adjustment appears markedly different from that employed in the patent in suit, in conception and practical application it is essentially the same. In both, the gripping blocks in pairs by substantially equivalent methods are adapted through the longitudinal and lateral movements to the varying widths and by the vertical movement to the varying diameters of the wheels. We hold claims 2 and 3 valid and infringed.

The validity of claim 5 is assailed as a mere aggregation and as lacking in invention. The elements are all old. Wedge-shape gripping jaws capable of longitudinal and lateral movement, by which the preliminary gripping of the tire is effected, are found in numerous patents. In Francis, No. 843,392, and in Hackney, No. 862,471, means are afforded for the pair of gripping blocks to act longitudinally and laterally in unison. In Brooks, No. 600,117, Tice, No. 568,643, House, No. 690,523, and Hackney, No. 862,471, by the insertion and advancement of wedges the gripping blocks may be vertically adjusted to conform to the periphery of the tire, though the adjustment of each block is independent of the adjustment of the other. Hydraulic presses had been used on full circle machines for many years. Denham, No. 717,084. Smith, No. 387,823, for upsetting I-bars, includes a hydraulic press to impart movement to the movable block in the direction of the stationary blocks. Hydraulic means were similarly employed on the West hydraulic tire setter.

But, until the patent in suit, no one had constructed an hydraulic edge-grip tire setter that was efficient in operation or commercially successful. The West machine had three hydraulic presses, each operating independently of and unconnected with the other—one to draw the head blocks together, and one on each side to move the gripping jaws on each head laterally so as to engage the edges of the tire. The determination of the amount of pressure required to effect a proper engagement of the tire and the blocks called for the exercise of careful and discriminating judgment on the part of the operator. If the sidewise pressure is too great, as is often the case, the tire will be kinked or crushed; if the force is insufficient, as is frequently the case, the side grips will slip and mar the tire and felloe. The machine as a whole is complicated, clumsy, difficult to manipulate, and uncorrelated in its operation; that it was a commercial failure and abandoned is not denied.

Defendant contends, however, that even if the West machine is not an anticipation, nevertheless its use of hydraulic means to impart movement to the head blocks, in conjunction with the teachings of the patents to Tice, Brooks, House, Francis, and Hackney, demonstrate that plaintiff's structure involves no patentable advance. The mere substitution of manual for hydraulic pressure, or hydraulic for hand power, does not ordinarily involve invention. But the novelty of claim 5 lies in combining on such a machine, in which the initial gripping is manually effected, a hydraulic press for the final gripping and for drawing the head blocks together, means for adjusting the gripping blocks longitudinally and laterally in unison relative to their respective head blocks, and accessibly located hand or possibly other power means for operating the hydraulic press.

While the patent examiner originally rejected as a mere aggregation a claim quite similar to claim 5, he was finally convinced that the several elements did form a combination, and that, in thus creating this unitary structure, there was invention. The new claim contained the additional statement that the means for operating the hydraulic press should be adjacent to the means by which the wedging action of the gripping jaws is produced; in our judgment, however, the grant was also based upon a justifiable conviction that the first action was erroneous. The device of claim 5 is a unitary structure, each element co-operating with the others in the manner and for the purpose hereinabove stated.

Support for the ultimate conclusion is found in the fact that, despite the patents to Brooks and Tice, with their means of effecting the preliminary gripping of the tire, Smith's use in 1888 of hydraulic means to draw head blocks together for the purpose of upsetting I-bars, and a similar use in the West edge-grip tire setter, manufactured between 1897 and 1900, Henderson and Lourie, in 1905, were the first to construct an effective, operative, and commercially successful edge-grip tire setter, suitable for the ordinary repair work in a blacksmith shop. They first grasped the importance of using, but limiting the use of, hydraulic power in such machines, by not applying it to obtain the preliminary gripping, for which purpose such power is dangerous, because

it may be excessive, but by adopting it both to effect the final grip and then to impart movement to the head blocks after the engagement of the tire with the machine had been secured by means of gripping blocks capable of an exact and correlated adjustment. The commercial success fortifies the strong presumption of validity.

As infringement of claim 5 was not and could not be controverted, if the claim is valid, the decree must be affirmed.