## Case No. 5,418.

### GILBERT & BARKER MANUF'G CO. v. WALWORTH MANUF'G CO.

[2 Ban. & A. 271; 9 O. G. 746; 1 Law & Eq. Rep. 420.] [1]

Circuit Court, D. Massachusetts. April 4, 1876.

PATENTS—PATENTABILITY OF INVENTION—CHANGE OF LOCATION OF PARTS.

1. The patent for an improved apparatus for carburetting air. No. 93,268, dated August 3, 1869, held invalid for want of patentability in the alleged invention.

2 Mere change of location of parts is not patentable except where such change of location brings into existence a new combination of devices, operating by reason of such new combination to produce a new and useful result.

In equity.

E. W. Stoughton and William Stanley, for complainants.

Causten Browne and Jabez Holmes, for defendants.

SHEPLEY, Circuit Judge. The complainants are the owners of letters patent of the United States, dated August 3, 1869, No. 93,268, for an improved apparatus for carburetting air. The invention is described in the specifications as relating to the apparatus used for carburetting air in the manufacture of illuminating-gas for dwelling-houses and factories, and as consisting in the arrangement of the carburetter with the meter-wheel or pump for driving the air through said carburetter to the burners, and the coil and heating-pipes for evaporating the oil within the carburetter, whereby the whole apparatus is rendered perfectly safe with regard to life and property in the building lighted, the carburetter being situated in a vault or house away from the building to be lighted, while the heating-apparatus and the pump or meter-wheel are within the building to be lighted, and where they can be easily and quickly reached, and under perfect control of the occupant of the house. There was nothing novel in the meter-wheel or the carburetter, or the combination of a meter-wheel with a carburetter, or their connection with a gas-pipe, air, or heating-pipes, except so far as their location and arrangement was claimed to be new, by placing the carburetter in a vault or house by itself, separate from

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission. 1 Law & Eq. Rep. 420, contains only a partial report.]

the building to be lighted, and arranging the meter-wheel and the heating-coil in the building to be lighted, where they could be easily reached, and under control of the occupant of the house, without exposure to explosion consequent upon frequent access to the room in which the carburetter is placed, and connected by pipes passing through a wall or the ground, so as to cut off any communication of gas or flame between the room in which the carburetter is placed and the building to be lighted.

It is denied on the part of the defendants that there is any patentability in such a change of location of parts, all of which are confessedly old. Mere change of location is not patentable; but where change of location brings into existence a new combination of devices operating by reason of such new combination to produce a new and useful result, such new combination is patentable. Woodruff, J., in Marsh v. Dodge & Stevenson Manuf'g Co. [Case No. 9,115].

I am not prepared to say that the new arrangement and location constituting a new form or mode of combination, as described in the patent, taking into consideration the new and useful result claimed for it, was not patentable, if it was novel at the time claimed as the date of plaintiffs' invention. The combination and arrangement of the respondents embrace all that is claimed in the first claim of the patent. No issue of infringement need, therefore, be considered. The only material question left for consideration is whether what is claimed in the first claim of the patent was new in the sense of the patent law. The determination of this question requires a careful and critical analysis of the supposed invention and of the first claim of the patent, and a careful comparison of the claimed invention with the prior existing combinations and arrangements claimed as anticipating it.

The invention described and claimed is "The arrangement of the carburetter" (that is, any carburetter, for no new form of carburetter is claimed or was invented) "with a meter-wheel, said wheel being driven by a descending weight, or other equivalent mechanical power, applied to force the air through the carburetter to the burners" (this allows the use of an equivalent for the weight to drive the meter-wheel, and embraces the use of "other equivalent mechanical power applied to force the air through the carburetter to the burners," as, for instance, an hydraulic blower, an air-pump, a pump with a gas-holder, known generally as a gasometer, a bag weighted, or other well-known equivalents, for this purpose, of a meter-wheel pump), "said carburetter being placed within a vault" (i. e., an arched or vaulted appartment, especially a subterranean room) "or house" "by itself, separate from the building to be lighted, the whole arranged and connected with pipes, substantially" as therein (in the patent) "described and set forth."

[Drawings of patent No. 93.268, publishe] from the records of the United States patent office.]

This arrangement and connection embraces —First, pipe A, the air-pipe, which, running through the wall of the building, and, also, when required, the ground between the walls of the building to be lighted and the carburetter-room, connects the meter-wheel pump, or its equivalent, inside the building with the carburetter in its "vault or house," furnishing a conduit for the air from the pump to the carburetter; second, the heating-coil P and pipes R R connecting a heating-coil in the building with a carburetter in the vault or house; third, the pipe N, the gas-pipe leading through the wall or ground, or both, as the case may be, from the carburetter in its vault or house into the building to be lighted, furnishing a conduit from the gas in the carburetter to the distributing-pipes and the burners. The first claim in the patent is for all this combination and arrangement (exclusive of the heating-coil P and heating-pipes R R). The second claim is for the heating-coil and its connections with the heating-pipes, and the carburetter with reference to their respective locations. As the defendants use no heating-coil or pipes, no question arises in this case on the second claim, and its only importance is in aiding in the construction of the first claim.

Having now definitely stated the invention described and claimed in the patent, we pass to the consideration of the function and purpose of the patented combination and arrangement. This is clearly set forth by the patentees. They describe their invention as consisting in an arrangement "whereby the whole apparatus is rendered safe with regard to life and property in the building lighted, the carburetter being situated in a vault or house

away from the building to be lighted, and where they can be easily and quickly reached, and under perfect control of the occupant of the house."

Without instituting a comparison between the patented invention and all the other prior existing forms of apparatus for carburetting air for illuminating purposes, which have been proved to have existed, I have selected the Meriden machine for the reasons that it is proved to have been constructed and operated successfully in the fall of 1864, while the invention of Gilbert & Barker is not even claimed to have been before June, 1867, and also because this apparatus appears to me to have embodied in 1864, in successful and practical and public use, every element of the first claim of the complainants' patent of August, 1869.

The Meriden apparatus was used for carburetting air for illuminating a factory. It consisted of an air-pump and air-receiver, a well-known equivalent for the meter-pump wheel, a carburetter, the equivalent of complainants' carburetter, placed in a brick vault built on the surface of the ground, ninety-three feet from the main building to be lighted. This was actually both a vault and a house, and, therefore, identical with complainants' vault or house. There was an air-pipe, which connected the pump inside of the building to be lighted with the carburetter in the vault, passing underground and furnishing a conduit from the air in the pump to the carburetter, being thus the equivalent of complainants' pipe A. There was a gas-pipe leading from the carburetter in the vault through and underground, and furnishing a conduit for the carburetted air or gas from the carburetter to the building to be lighted. This is identical with complainants' pipe N. There was also a steam-pipe with its connections, but that is not material to the inquiry involved in this case, because the defendants do not use any artificial heat, and the complainants do not make their heating-coil and pipes a part of the arrangement and combination claimed in the first claim. The Meriden apparatus contained every element of location, arrangement, and combination claimed in the first claim of complainants' patent.

I have carefully examined and considered the learned opinion of Judge Woodruff, of the second circuit, in the case of these same complainants against Oakes Tirrell [Case No. 5,417]. It is not without much diffidence and great reluctance that I am forced to arrive in this case at conclusions which may appear to be at variance with the opinion of that learned, upright and able judge. Had the record in this case presented the same or substantially the same state of facts as was presented in the record before Judge Woodruff, I might have been contented to rest my conclusions upon the weight of his high authority, leaving the responsibility of revision, if revision were necessary, to the

supreme court of the United States; but the additional evidence in this record, not found in the case before him, compels me to make an independent and critical comparison of the invention claimed, with prior existing combinations and arrangements. Such examination and comparison force upon me the conclusion that the assignors of the complainants were not the first and original inventors of what is claimed in the first claim of their patent. I cannot find, upon the most careful examination of this patent, what Judge Woodruff seems to have found in it, any claim or description of an invention of such an arrangement of the gas-pipe as would effect a preliminary condensation before the gas enters the distributing-pipes, which would relieve the operation of the apparatus from the dangers arising from condensation by reason of the pipes passing through cold apartments in the building to be lighted. I can find nothing in the patent which discloses any such danger. I can find nothing in the patent or drawings which teaches how such danger is to be avoided by preliminary condensation. I can find no statement that by the patented apparatus such danger is obviated, or any statement that it is the purpose of the invention, or the function of the arrangement or combination, to avoid such danger by such preliminary condensation. John F. Barker, one of the patentees, in his testimony says machines are highly dangerous unless condensation in the building is prevented; that this is done by laying the pipe in the ground, about the frost-line in a cooler medium, causing preliminary condensation. The patent is silent as to this danger, and fails to disclose any mode of adjusting such an arrangement to meet the different requirements of different climates and temperatures. On the contrary, the drawings show only a gas-pipe passing through a partition-wall between the building to be lighted and the carburetter-vault, under such conditions that no amount of preliminary condensation would be likely to take place in any degree equal to what took place in the then existing well-known arrangements in common use. The advantages of the arrangement claimed in the patent itself are these, and only these: First, "whereby the whole apparatus is rendered perfectly safe with regard to life and property in the building lighted, the carburetter being situated in a vault or house away from the building to be lighted, while the heating apparatus and the pump or meter-wheel are within the building to be lighted, and where they can be easily and quickly reached, and under perfect control of the occupant of the house;" and again, "so that the possibility of any accident resulting from the escape of the gas from the carburetter shall be entirely removed, as there will then be no vessel containing gas within or near the building to be lighted." There are many other references to the patent and the drawings, and other comparisons between the described invention and arrangements, other than those of the Meriden apparatus, which might be made confirmatory of the views I have taken; but those already stated are so conclusive to my own apprehension, that further illustration would seem superfluous. It follows that the bill must be dismissed.

*Bill dismissed with costs.*

[For another case involving this patent, see Gilbert & Barker Manuf'g Co. v. Tirrell, Case No. 5,417.]