WELLMAN v. MIDLAND STEEL CO.

(Circuit Court of Appeals, Seventh Circuit. May 6, 1902.)

No. 774.

1. PATENTS—ANTICIPATION—CHARGING FURNACES.

The Wellman patent, No. 421,797, for an improved method of charging furnaces shows no patentable improvement over the devices described in prior patents granted to the same patentee, and is void for anticipation.

Appeal from the Circuit Court of the United States for the District of Indiana.

For opinion below, see 106 Fed. 226.

The bill was to restrain infringement of Letters Patent No. 421,-797, granted February 18, 1890, to Samuel T. Wellman for a certain improved method of charging furnaces. The method is said in the letters patent to be adapted to charge open-hearth furnaces for the

manufacturing of steel, or any melting furnace that is charged through doors or openings in the side, in contradistinction to blast furnaces, or such as are charged from the top.

The drawings and specification of the patent in suit are as follows:

"My invention relates to an improved method of charging furnaces; and it consists in the steps hereinafter described and claimed. My improved method is adapted to charge, for instance, the Siemens, Martin, or open-hearth furnace for manufacturing steel, or for charging any melting-furnace that is charged through doors or openings in the side of the furnace, in contradistinction to blast-furnaces, or such as are charged from the top.

"Heretofore in charging, for instance, open-hearth steel-furnaces the practice has been to pile by hand the coarser materials—such as broken pig-iron, &c.—on the broad flat end of a long charging-bar, known as a 'peel,' such charging-bar resting on a roller located at the front of the furnace-door, this bar having a handle at the rear end thereof for the operator in manipulating the charging-bar. Other and similar charging-bars were provided having a larger spoon at the forward end thereof for receiving the finer material. By such primitive means the material in comparatively small quantities was run into the furnace and dumped. This method of charging was slow, whereby the operations of the furnace were greatly delayed, and on account of manual labor required the charging was expensive. For instance, with from three to four men, the one for operating the charging-bar and the others for placing the material on the charging-bar, a ton of material was charged usually in about from six to ten minutes, and

at such rate it required about from two and a half to three hours to charge a furnace of thirty tons capacity. With my improved method the charging-bars aforesaid and the men for operating the same are dispensed with, and in place thereof dumping-boxes are employed. The furnaces, in case there are more than one, are set in line, with track-rails extending in front of the furnaces and leading from thence to the yard or place where the material is stored or received, with cars operating on the tracks for bringing the material alongside of the furnaces. The dumping-boxes may be of any desired size, the capacity of those that I have thus far used being about one and a half tons of material each. These dumping-boxes are placed upon the cars and filled with the material, it requiring no more labor to fill the boxes thus placed than it would require to load the same amount of material directly onto the cars without the boxes. Enough dumping-boxes and cars should be provided for carrying the material necessary in charging at least one furnace, and assorting of material in the way of selecting the proportions of different ingredients is done in filling the different dumping-boxes, so that the latter contain in the aggregate a charge for a furnace, and may be dumped indiscriminately into the furnace.

"Suitable mechanism operated by power is provided for lifting successively the loaded dumping-boxes from the car, conveying the same into the furnace, dumping the load, and withdrawing the empty boxes and returning them to the cars. It requires usually but the fraction of a minute to thus handle each dumping-box, and a thirty-ton furnace may be charged in from twelve to fifteen minutes. The mechanism for thus handling the dumping-boxes in charging may be varied indefinitely, according to circumstances.

"Suitable mechanism for carrying out my method, more especially where a series of furnaces are set in line, is outlined in the accompanying drawings.

"Figure 1 is a side elevation, partly in section. Fig. 2 is a plan, partly in section. Figs. 3 and 4 are modifications showing, respectively, tongs for handling the dumping-box and a box with a dumping-bottom.

"A A are melting-furnaces of the open-hearth variety, and B B are tracks extending along in front of the furnaces and leading from thence to the yard or wherever the material for supplying the furnaces is stored or received, and b b are cars adapted to travel on the tracks in transporting the material alongside the furnaces.

"C C are the dumping-boxes shown resting on the cars, the boxes being laden with material ready for dumping. The body of each dumping-box C is in the main usually of heavy plate metal with cast-metal head or end C', the latter having flanges c of the variety shown in Fig. 2, these flanges being upright and located some little distance apart and projecting outward and along the outer edge thereof, being offset toward each other, as shown at c', the flanges partially inclosing a recess $c^2$, and the flanges near the upper ends thereof having transverse holes for receiving a pin or key $c^3$.

"D is the lifting-bar, having a broad head D', adapted to fit in recess $c^2$ of the dumping-box. In attaching the lifting-bar to the dumping-box, pin $c^3$ having been withdrawn, the pin is returned to its place after head D' is in position in the recess, the pin when in place extending across above head D', thus locking the parts, whereby the dumping-box is held rigid with the lifting-bar. Bar D is mounted on and journaled in suitable boxes connected with tilting frame E, with hydraulic ram or other suitable means for raising and lowering the frame and lifting-bar, in lifting the dumping-boxes from the car, and returning the boxes to the car. Frame E has a reciprocating movement endwise, whereby the lifting-bar and dumping-boxes are thrust into the furnace and withdrawn therefrom. Bar D is rotated on its axis by means, for instance, of ram F or other suitable appliance in dumping the boxes in the furnace. The mechanism for supporting and operating the lifting-bar is mounted on car G, the latter by means of suitable tracks traveling along in front of the different furnaces, and the car may be stopped whenever bar D is opposite any furnace of the series or opposite any door of the respective furnaces.

"It is not considered necessary to further describe the mechanism for operating the lifting-bar, for the reason that analogous mechanism is shown

and described in United States Letters Patent Nos. 394,419 and 394,421, granted to me December 11, 1888, and similar mechanism having a rotating lifting-bar having been made the subject of Letters Patent now pending. In place of the tongs shown in such application head D' is substituted, and the ram and mechanism for opening and closing the tongs is dispensed with. The tongs might be retained and made to grasp the dumping-boxes (see Fig. 3), but would be more expensive in construction than head D' aforesaid. It is preferable, but not essential, to reverse the boxes in dumping, as the dumping-boxes might be provided with hinged or dumping-bottoms. (See Fig. 4.) With a dumping-bottom the material would not be so well distributed in the furnace as is done by reversing the box in opposite directions with successive loads.

"I do not wish to limit myself to any particular construction of mechanism for operating the lifting-bar, as this may be varied indefinitely according to circumstances. Sometimes it might be more convenient to attach such mechanism to a traveling crane or other variety of crane; or in case, for instance, of but one furnace the mechanism could be greatly reduced or simplified."

The claims of the above mentioned patent—each of which the appellee is said to have infringed—read as follows:

"1. The means herein described for charging a furnace from the side thereof, consisting, essentially, of dumping-boxes, cars for conveying the dumping-boxes to a point opposite the charging-door, and a lifting-bar adapted to engage the dumping-boxes one at a time, convey them into the furnace, and discharge the load and return the boxes to the outside of the furnace, substantially as set forth.

"2. The means herein described of charging furnaces from the side thereof, consisting, essentially, in dumping-boxes for carrying the material, cars for transporting the loaded dumping-boxes to a position adjacent the furnace, and a lifting-bar conveying the loaded dumping-boxes into the furnace, dumping the load, and returning the dumping-boxes outside the furnace, substantially as set forth.

"3. The mechanism herein described of charging furnaces from the side thereof, consisting, essentially, in dumping-boxes for carrying the material, cars for transporting the dumping-boxes and load to positions adjacent the furnace, and a lifting-bar for conveying the loaded dumping-boxes from the cars into the furnace, dumping the load, and returning the empty dumping-boxes from thence to the cars, substantially as set forth."

Prior to the issuance of the above letters patent appellant was granted other letters patent (Nos. 394,419, 394,420, 394,421 and 408,-152), relating to instrumentalities for charging or drawing furnaces. The process set forth in these patents may be described as follows:

A car, carrying thereon a square steel billet, was placed on a track opposite the door of the heating furnace to be charged or drawn. From this car the billet was transferred to the furnace by means of a tong or grappling device adapted to engage it on its side, and capable of holding it in engagement during the operation of lifting it to a level with the furnace door, thrusting it into the furnace, and then discharging by tilting. Each of these motions—lifting, thrusting and tilting—was by separate hydraulic devices. The mechanism employed to operate the tongs consisted of an overhead traveling crane, supported upon elevated parallel track, one directly above the car tracks, and the other a distance therefrom, depending upon the dimensions of the crane. Suitable mechanism was employed to support and operate the crane. On this parallel track was a bridge, supported on wheels, traveling back and forth, and upon which was a car or trolley, running longitudinally with the bridge. When the

bridge was moved, the car or trolley carrying the charging arm and its operating devices were moved along in front of the furnace; when the car or trolley was moved longitudinally upon the bridge, the charging or drawing arm could be introduced into or withdrawn from the furnace. In connection with this mechanism, and mounted within the car or trolley, was a tilting frame, being pivoted at or near its center, in order to permit the front end being raised or lowered, to raise or lower the charging arm or bar which is mounted upon and projects from it.

The Court below held that the patent in suit disclosed no substantial differences from the mechanism employed in the prior art, and was, therefore, not a pioneer invention; that in this view there was no infringement and accordingly dismissed the bill for want of equity.

Robert H. Parkinson, for appellant.
John R. Bennett, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges.

After the foregoing statement of the case, GROSSCUP, Circuit Judge, delivered the opinion of the Court, as follows:

The patent in suit, in our opinion, adopts every feature of appellant's previous device. It substitutes for the square steel billet of the prior patents the metal or wooden box adapted to carry the segregated particles, such as bars, limestone, etc. It retains the feature of tongs to grasp the dumping boxes, but provides, as less expensive, an alternative mechanism, namely, a flanged recess in the end of the box adapted to receive the head of the lifting arm or bar, the arm or bar having a head adapted to fit the flanged recess. With this modification—which, however, is only alternative—the mechanism employed to lift the load to the level of the furnace door, to move the same into and from the furnace, and to tilt the same in the furnace, is identical with the mechanism of the prior patents.

There may be merit (though this we do not decide) in the substitution of the recess flange and suitable head for the previous device of tongs. But the question is, Can we decide, without reading something new into the patent in suit, that the claims are restricted to the flanged recess and suitable head, as interlocking means? We think not. The claims include the entire process set forth in the description, and this embodied the grasping by tongs, as well as by a flanged recess and suitable head. The patent must be sustained, as a whole, or not sustained at all; and to sustain it, as a whole, is to judge that the use of tongs in the process named had not been anticipated in the previous art. But this is clearly disproven by the patents already cited.

Nor do we think that the substitution of a box for the billet differentiates this patent from its predecessors. There is no inventiveness in this. The progress of the mechanic arts is not subject to the tribute levied by the patent laws for every departure from pre-existing methods. The departure set forth in the patent is only such as any mechanic would have adopted, had the occasion for the change arisen.

The decree of the Circuit Court will be affirmed.