### CARSON v. AMERICAN SMELTING & REFINING CO.

(District Court, W. D. Washington, S. D.   November 21, 1923.)

#### No. 144.

1. Patents ⊂⊃328—1,149,495 and 1,302,307, for metallurgical furnaces, held void for anticipation.

The Carson patents, No. 1,149,495, for a metallurgical furnace, and No. 1,302,307, for construction of roof for open hearth and reverberatory furnaces, both embodying the same inventive idea, *held* void for anticipation by the Siemens British patent, No. 2,413 of 1866.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Patents ⚬168(2)—Scope cannot be enlarged by construction to embrace abandoned or disallowed claims.**

A patentee may not by interpretation change his patent, and claim what he has previously abandoned, or what has been denied by the Patent Office.

**3. Patents ⚬157(3)—Understanding of patentee as to scope at time of issuance may be considered.**

In the construction of a patent, the understanding of the patentee at the time of its issuance may be considered as illuminative of the range within which it was understood when issued.

**4. Patents ⚬167(1)—Claims and specification should be read together.**

For a fair understanding, the claims and specifications of a patent must be read together.

In Equity. Suit by George Campbell Carson against the American Smelting & Refining Company. Decree for defendant.

Plaintiff alleges infringement of patents issued to him August 10, 1915, No. 1,149,495, entitled "Metallurgical Furnace," and No. 1,302,307, issued April 29, 1919, for "Construction of Roof for Open Hearth and Reverberatory Furnace." The last claim is claimed to be a division of the application for the first. Plaintiff filed original application on January 15, 1907. For lack of funds he acted as his own attorney and drafted the specifications, etc. He is a miner and has had no school training. On February 12, 1907, for noncompliance with the rules of the department, mistakes, improper writing fluid, and because of the fact that the application covered two inventions, the claim was rejected. Having migrated from the address given in the application, the notice of rejection was delayed in reaching him.

On November 7, 1907, an amended application was filed. This fared as the first, and A. S. Pare, an attorney, of San Francisco, was then appointed to prosecute the application. Many amendments followed and rejections made until January 15, 1915, when one claim in issue was allowed as follows: "In a metallurgical furnace having receptacles arranged above the roof thereof, passages from said receptacles leading to said furnace arranged in such a manner that the material in said receptacles passes out into said furnace by gravity and forms the lining thereof."

On June 29, 1915, within six months, and before the patent was issued, a divisional application was filed in the Patent Office claiming matter alleged to be shown in the original application, but not claimed, the applicant acting as his own attorney. His application was rejected, because anticipated by Siemens. He appealed to the board of examiners, who suggested two claims in the following language:

"We think appellant has made an invention that is not disclosed or suggested by Siemens, although the appealed claim does not define it. That invention may best be expressed in terms of process, or method, although it may also be defined in terms of apparatus. Considering it to be the duty of this office to render all reasonable and proper assistance possible to applicants for patents, we are suggesting herein two claims that we think state the invention appellant has made and has been attempting to patent, and we recommend their allowance, if presented in lieu of the appealed claim. These claims are as follows:

(a) "The method of protecting the walls of an open hearth or reverberatory furnace which consists in feeding the ores or fettling materials into the furnace chamber near the upper part thereof, and in causing the same to form a sloping embankment resting upon the floor of the furnace chamber and along the walls within the chamber between the bath and walls.

(b) "In an open hearth or reverberatory furnace, a floor, walls, extending upwardly from the floor, and feeding ports leading into the upper part of the furnace chamber and being so located that the ores or fettling materials entering therethrough may have unrestricted vertical movement downwardly to the said floor near the walls, and may form sloping embankments against

⚬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the walls to protect the latter from the heat and corrosive action of the metal bath.

"The two claims thus suggested express the same inventive idea, and therefore the suggestion of the method claim is not considered an infraction of the rule as set forth in Ex parte Aberli, 91 O. G. 2371, and Ex parte Trevette, 97 O. G. 1173. The decision of the examiner is affirmed, attention being directed to the above recommendation."

The case was referred to the primary examiner, and the claims 2 and 3 inserted, and, so amended, the claims were allowed, and on April 29, 1919, the patent was issued. On April 11, 1922, the plaintiff filed disclaimer under section 4917, R. S. (section 9462, C. S.), section 4922, R. S. (section 9468, C. S.), eliminating the words "or fettling materials," and from the specifications the words "or refractory," and on the following December 22d filed a further disclaimer, by which he disclaimed interpretation of the word "silica or silicious ores used as fettling material," and confined the word to "smelting ores."

In smelting ores in reverberatory furnaces it is necessary to protect the side walls of the furnace from the internal heat and from scorification by the liquid bath. At and prior to the date of the alleged inventions in issue, to build the necessary embankment against the inside wall of the furnace, doors were constructed in the side walls of the furnace, which for fettling were opened, and silicious material was thrown by means of shovels across to and against the opposite walls, building up an embankment against the wall. It was then tamped with clay by means of tamping bars, and the liquid bath prevented from coming in contact with the side walls. This tamping was done by hand, and the operators were thus exposed to the intense heat radiating from the interior of the open furnace, through the open door. It also admitted cool air into the furnace, which reduced the temperature below the smelting point, occasioning a waste of heat, and also of time, by the intermittent fettling which was necessary. The ore in reverberatory furnaces was introduced into the furnace through hoppers arranged in a row on the roof along the longitudinal center line; sometimes more of such hoppers were placed on each side of the longitudinal center line. The ore was admitted through these hoppers, and formed in the furnace piles of conical shapes; rables were inserted through the side doors, and these conical masses leveled off, so as to produce as smooth a smelting surface as possible. The hoppers were then shut off and the side doors closed, and the smelting began.

The plaintiff claims by this method and process to have closed the side doors, dispensed with the center charging hoppers, and introduced an opening near the roof along inside the wall, through which he introduces smelting ore by dropping the ore alongside of the wall in the furnace, piling up and making an embankment sloping from the top of the furnace against the walls and extending inward into the furnace in a crescent shape, thereby protecting the side walls from the intense heat and from scorification from the matte, thus using smelting ore for fettling material, exposing a large surface to the smelting operation, and the ore being fed slowly will melt and flow down the embankment to the bottom of the furnace; the difference in specific gravity causing the slag to be at the surface and matte in the bottom of the bath. As fast as the ore is smelted, new ore is fed into the opening through the roof, and brought automatically within the range of smelting operations—the contention being that this produces a new method of smelting, as well as a method of protecting the side walls of the furnace from scorification, and that it makes the smelting operation continuous; that it exposes a maximum surface of ore, making the smelting more efficient by reason of a constant uniform temperature, obviating laborious operations of fettling by hand, saving cost of fettling material anad labor, and greatly increasing the tonnage of ore smelted within a given time.

The defendant contends that the contention that the claim of patent No. 1,149,495 is but a structure, and that the lining of the claim is the refractory metal of the specification, and may be in whole or in part refractory ore, containing metal value which would be smelted, and the assertion that the "duplex nature" of the invention is supported by an "ambiguity in the specifications," is without foundation, and that the use of the side hoppers and

smelting in the smelting furnaces came with the advent of oil or powdered coal for fuel and "flotation concentrates,"[1] which was in 1913, this fuel increasing the available heat for smelting from 2,500° F. to about 3,000° F., and nearly doubling the output. This increased the need for fettling material, and the plaintiff repeated only what was done at Butte, Bingham, and Anaconda in 1905–06; that the introduction of "flotation concentrates," which are finely comminuted ores which go into the furnace at 900° F. and flow like water on mercury, and on introduction spread on the matte throughout the furnace area, and that the plaintiff had no conception of such method of introducing material into the furnace; and that claims 2 and 3 of patent No. 1,302,307 deal only with fettling material, and that the claim now made may not be read into the patent, and finally the apparatus contended for in the first patent and process in the second patent express the same inventive idea.

It is claimed that by the disclaimers an attempt is made to redraft the patent by altering the subject-matter of the alleged invention, and that in any event the alleged inventions are lacking in patentable quality; that they are obvious to one skilled in the art, and that, if patentable, the claims were anticipated by Siemens and by Charles, and many others set out in the answer. Siemens' British patent No. 2,413, for "improvement in smelting metallic ores, and in furnaces to · be employed for that purpose," provides that "the invention has for its object the production of iron or steel directly from the ore in a continuous manner, * * * and consists in exposing the mass of ore * * * with reducing agents * * * to the surface action. of intense heat, * * * the mass of ore being arranged in such a manner * * * upon inclined surfaces that the fused metal produced at the surface readily passes away therefrom, so as to leave such surface always exposed to the action of heat. * * * The furnace may also be used with advantage for the fusion and reduction of copper * * * ores."

The arrangement of furnace which he prefers to employ for this purpose "* ⁕ ⁕ consists of an oblong or polygonal fire brick chamber, two or more sides of which are formed as inclined surfaces, which chamber is closed in at top by means of a brick arch having openings which may be provided with slides through which the ore is introduced unto the inclined surface. * ⁕ ⁕ In the bed of the furnace is formed a basin into which the molten metal flows. * * * The sides are protected against fusion by the ore ⁕ ⁕ ⁕ to be melted, particularly at the surface line of the liquid cinders where brick work is rapidly destroyed. * * * ⁕ "

First claim: "Producing cast steel and iron directly from the ore by exposing the ore in a more or less finely divided state to the surface action of the intense heat. ⁕ * * "

Third claim: "Rendering the simultaneous reduction and fusion of iron ore effected by. means of intense surface heat * * * by supplying the ore by gravitation, so as to maintain the mass of ore upon the sides of the reducing chamber in proportion as it is converted and fused."

Fourth claim: "Arranging the chamber * * * in such a manner that the ore descends through hoppers or shafts upon the sides of the chamber so as to protect the walls * * * from the heat of the furnace and the

---

[1] The ore is first ground to a condition of minute fineness and mixed with water in a tank; a very small quantity of oil is added, being a fraction of 1 per cent.; then the mixture is subjected to violent agitation whereby myriads of air bubbles are generated; the oil attaches itself to these air bubbles in the shape of a thin film, and the metalliferous material (sulphide) adheres to this oily film, sticking thereto like a fly in molasses, while the gangue matter settles to the bottom of the tank by gravity; thereupon the air bubbles, coated with the sulphides, rise to and float on the surface by reason of their buoyancy, in the form of a thick froth, and are then scraped or drained off. During the operation the air bubbles burst and the sulphides are left· in a state of minute fineness. This is merely a new ·method of concentration, and by reason of the fact that the sulphide-coated air bubbles float on the surface of the liquid they are called "flotation concentrates." Mineral Separation v. Hyde, 242 U. S. 621, 37 Sup. Ct. 82, 61 L. Ed. 286.

corrosive action of the slags or cinders of the metallic bath by the interposition of the ore itself. * * *"

Siemens' British patent No. 14,143: "The furnace is preferably in the form in plan of a long rectangle. At one end I form the flues for admitting the heated air and gas. * * * Next to this end of the furnace I form a deep bed, * * * from which I carry a slope up to the extreme end, where there is an opening through the roof. Through this opening I feed pulverized ore. * * * This, as it gradually descends the slope, is subjected to the heat, * * * and the metal produced flows down to the basin, where it is collected with the slag above it. He claims: "The construction of a regenerative gas furnace for continuous reduction of iron ore, * * * having a deep basin provided with tap holes, and having * * * at each side of the bed a slope fed with ore mixture from the crown of the furnace."

The Charles claim is: "By feeding the raw silicious ores close to the side walls of the furnace, thereby preventing the molten slag, matte, or any of the sulphides from touching the brick lining, corrosion of the wall around the hearth can be prevented, the life of the furnace prolonged, labor and material saved, and increased tonnage obtained, as the molten bath will attack these silicious ores, instead of the furnace walls. Secondly, that by reducing the size of the charges and feeding them in oftener and at various places over the hearth, with the furnace kept at full heat all the time, the tonnage will be compounded several times, and saving labor in feeding, leveling, charging, and fettling will be accomplished, and a saving of heat, as the present large charge brings the furnace below the smelting temperature, whereas under my system a continuous operation results."

The reverberatory furnace of the defendant is 130 feet long, and 25 feet wide, inside. The walls and roof are silica brick. The roof is an arch, held up by steel buck stays on each side of the furnace, with a tie rod at the ends to hold them together; at the front end a stack or flue to carry the cases from the furnace at the back of the oil burners. On the side, directly above the walls on the inside, are openings extending 100 feet down the side, through which the furnace is charged and fettled. Above the furnace is a floor having tracks coming from an upper level, on which cars haul "charges" from the roaster, and also haul fettling materials. Under the floor are two rows of hoppers, each directly above the opening in the arch of the furnace, into which pipes are run from the hoppers, into which calcines from the roaster and raw ore and flue dust is brought. A *slide* gage is a *few inches below the hopper*, being *about 6 feet* above the *arch*. The material to be smelted is brought in cars over the hoppers, a door on the bottom of the car is opened, and material run directly into the furnace through the hopper, and is fed into the furnace as *necessary*. Raw ore is piled up inside of the wall, and when this is done calcine, a thin, impalpable powder, which is very fluid, is dropped into the furnace, and spreads over the furnace, and the smelting continues for about an hour, and the bark of ore along the wall is slowly smelted off, and the material in the center of the furnace is smelted. Another charge of calcine is dropped, which repeats the operation of the preceding charge, and when the ore along the wall is smelted, exposing the wall at the top of the arch covering a period of three or four hours, another load of raw ore is dropped, and a new pile made, the charge smelting, producing matte and slag. The matte settles, and the slag floats. About every four hours slag is skimmed off, and the matte is taken from the tap hole, which is located in the side of the lower level. Between the ore on the inside of each wall is a liquid material usually covered with floating calcine, which liquid will vary in depth from 9 to 15 inches and width from 12 to 16 feet. About 20 per cent. of the charge in the defendant's reverberatory is raw ore, which piles up on the side, and 80 per cent. calcine, which spreads over the matte.

At a New York meeting of mining engineers in February, 1915 (reported in American Institute Mining Engineer, vol. 51, p. 743), Lewis Bender read a paper in which he stated in substance that coal-dust fired reverberatories were installed in a Canadian copper company, and that the results of "* * * this incident of firing are gratifying, and show a decided saving in cost of smelting as compared with grate firing with lump coal," and stated

that the furnace was remodeled. "* * * There are no side doors to this furnace, as it was thought that, with the present arrangement for feeding, no 'fettling' or 'claying' would be required. * * * The charging is done on either side of the furnace from longitudinal hoppers, * * * through which the charge is intermittently dropped. The charge is kept well above the slag line at all times; in this way the side walls are protected, and no fettling is needed on this portion of the furnace."

The testimony, I think, is conclusive that the plaintiff had concluded upon his invention during the summer of 1906. He disclosed his invention to others at Denver, Salt Lake, and Butte, as early as June or July, and demonstrated it by sketch as early as September, 1906; that the reason for delay in making his application until January, 1907, was lack of funds for preparing and filing the application. The testimony is likewise conclusive that H. L. Charles, prior to February 14, 1906, had cut a hole in each side of the center line of the roof back of the bridge of the furnace and "* * * put down the ore, and put it all around * * * pretty near the level of the bridge, and around the corner and down the sides." He had also constructed a large hopper at Bingham, from which a pipe was run into several holes cut into the roof along the bridge and side, "to fettle the furnace back of the bridge and around the corner to the side." Carson has never constructed or operated a reverberatory furnace under his patent. Side feeding or charging was not practiced by Charles prior to the alleged invention by Carson. The most that was done was limited fettling back of the bridge and around the corner, and the only attempt was to protect the angle between the bridge wall and the side wall.

John H. Miller, Chas. S. Wheeler, Jr., and A. W. Boyken, all of San Francisco, Cal., for plaintiff.

John A. Shackleford, of Tacoma, Wash., Frederick P. Fish, of Boston, Mass., Albert M. Austin, of New York City, and J. L. Stackpole, of Boston, Mass., for defendant.

NETERER, District Judge (after stating the facts as above). [1] The purpose of plaintiff's invention, patent No. 1,149,495, is to feed material into the furnace—

"*primarily* to make a lining for the furnace, *though primarily it gives up any values it may contain to the bath.*" "A moving temporary lining of the furnace chambers." "A dike shutting the molten interior of the metallic bath away from contact with the walls of the furnace chambers.",

Patent 1,302,307:

"To protect the walls of a reverberatory furnace by feeding ores into the furnace through feeding ports leading into the upper part, where it may have unrestricted downward movement to the floor, causing it to form an embankment resting along the walls between the bath and the walls.".

In plain words, the Siemens furnace has inclined surface walls closed at the top by a brick arch having openings through which ore is introduced by gravitation onto the inclined surface, where it is exposed to intense heat, the molten metal flowing to the bottom, leaving the inclined surface exposed to the heat, the *walls being protected from the corrosive action of the metal bath,* "particularly at the surface line of the matte, where the brick is repeatedly destroyed;" and the Carson furnace has walls extending vertically from the floor, closed at the top by a brick arch having openings near the walls through which ore is discharged *unrestricted* in a vertical downward movement to the floor near the walls, and forming sloping embankments against the walls and protecting them from the heat and corrosive action of the metal bath.

While the Siemens furnace in the patent No. 2,413 is a small affair compared to the furnace of the present day, and was a blast furnace in reducing iron ore, yet the specifications provided that it may " * * * be used to advantage for the fusion and reduction of copper * * * ore. * * *" There is this difference in construction: The Carson wall is vertical, and the Siemens wall has a 60 per cent. incline. In each, however, the ore may be deposited in a similar fashion. The ore embankment between the matte and the wall in the Carson patent is thicker than in the Siemens patent. The angle of repose of the ore in the furnace in each patent must be the same. The angle of repose is the slope at which the ore or material deposited will attain without any sliding effect.

While the Siemens furnace is inefficient compared with modern smelters, in principle, however, Siemens taught the art of dropping ore on a slope exposing a large surface to intense heat, the exposed charge, smelting, running down in rivulets towards the center of the furnace, and exposing fresh surface to the heat; this being repeated, and new charges being added as necessary by the use of slides through which the ore is introduced, resting on the floor of the hearth and against the walls, and protecting the walls from the heat of the furnace and erosive action of the bath. This is also the Carson idea:

"The materials pass by gravity into the furnace and form a border or levee resting on the hearth and against the walls of the furnace, and act as an inside lining to protect the same from scorification and erosion by the bath. * * *"

Again:

"Ideal smelting charges can be fed, and the portion next to the furnace wall never reach the point of fusion, while that portion in the interior of the furnace will be in a high state of fusion. * * * And in some cases it will be unnecessary to build the furnace walls with brick, as the refractory material can rest against plates held in place by steel beams, which may also support the roof."

Figure 1:

"15, are gates or dampers to control the flow of the refractory material through the orifice, 6."

In fact, there is no difference, except "in some cases" the substitution of plates "held in place by steel beams" for brick walls.

The objection of the plaintiff to the impracticability of the Siemens patent appears overcome by the construction of the furnace at the Garfield smelter, where the angle formed by the floor and vertical wall was filled in with brick to make an inclined surface of 60 degrees, as in the Siemens patent, and upon ore being introduced in the openings in the roof, the angle of repose of the ore was found to be from 30 to 50 degrees, depending on the character of ore introduced, and this incline did not operate against the protection of the wall from heat, and sustains Claim 4, Siemens British patent 2,413, and the furnace was successfully operated in a commercial way for more than one year, and was, it is said, in operation at the time of this trial. This would make it appear that the substance of the Siemens invention may not be held inefficient because of alleged imperfections in minor matters

affecting the substance of the invention claimed (Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749), or application to new uses in the art (Lovell Mfg. Co. v. Cary, 147 U. S. 623, 13 Sup. Ct. 472, 37 L. Ed. 307). The angle of repose of the flotation concentrates in defendant's furnace is not more than 30 degrees.

It appears that the Siemens British patents anticipated and render invalid the claim of the Carson patent, No. 1,149,495. In thus concluding, I am not unmindful of Siemens' statement in his application for American patent No. 113,584, 1871. It was to remedy what he considered inefficient and ineffectual in practice in his British patent, No. 2,413, that he took out two subsequent British patents, and in his specifications for the American patent, making reference thereto, he says:

"Notwithstanding these improvements, it was difficult to realize all the conditions necessary to insure satisfactory results. The reduction of iron ore in close retorts or muffles is essentially a slow and expensive process and the pulverulent iron produced thereby, upon being introduced into the melting furnace, floats upon the metallic bath for a considerable length of time without being incorporated with it. Being exposed in the meantime to the oxidizing and sulphurizing action of the flame, the metallic oxide thus produced corrodes the banks of the metal bath, and, being a nonconductor of heat, causes the fluid metal below to set."

Nor to the conclusion of the Board of Examiners in the Patent Office, in its decision on the Carson appeal in patent application, No. 1,-302,307, saying that, in view of the United States patent admissions:

"We do not feel warranted in giving full credit to Siemens' statement in his fourth claim, *that the walls are protected from the heat, and corrosive action of the slag and cinders of the metallic bath by the interposition of the ore itself.*"

This statement has no application to the 1866 patent. He was not speaking about raw ore. He did not say that the walls were not protected from the heat and corrosive effect of the slag and cinders of the metallic bath by the ore itself, as claimed in his patent, nor did he say anything to detract from his statement in his fourth claim in Patent No. 2,413. He had reference to a product of closed retorts or mufflers, which are not present in patent No. 2,413, but are separate apparatuses introduced by his patents of 1867 and 1868, and it is the oxidizing of this product, *pulverulent iron,* when subjected to the action of *steel smelting* furnaces, which corrodes the banks of the metal bath in the steel furnace, but this is a separate apparatus. And again referring to patent No. 2,413, in his 1871 patent, he says:

"It was found, however, in practice it was *difficult* to realize all of the conditions necessary to insure a satisfactory result."

It was not found *impossible,* but *difficult,* and from the language employed in his 1871 patent it would appear that there was no difficulty with the raw ore, as set forth in the fourth claim, supra, and that the first or preparatory process relating to the treatment of raw ore may be *carried out in a furnace resembling in form a copper smelter,* and is to have the charging doors "at the sides or in the roof." (All italics mine.)

At bar and in the brief plaintiff asserts patentable novelty to "a new process of smelting," which consists of "side charging" all smelting

ores, and nothing but the smelting ores, and obviating the use of fettling material whatsoever.

[2] Plaintiff may not by interpretation change his patent, and claim what he has heretofore abandoned, or what has been denied by the Patent Office. Leggett v. Avery, 101 U. S. 256, 25 L. Ed. 865; Hestonville Ry. Co. v. McDuffee, 185 Fed. 798, 109 C. C. A. 606; Hubbell v. U. S., 179 U. S. 77, 21 Sup. Ct. 24, 45 L. Ed. 95; Sutter v. Robinson, 119 U. S. 541, 7 Sup. Ct. 376, 30 L. Ed. 492; Roemer v. Peddie, 132 U. S. 313, 10 Sup. Ct. 98, 33 L. Ed. 382; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 14 Sup. Ct. 627, 38 L. Ed. 500; Weber Electric Co. v. Freeman, 256 U. S. 668, 41 Sup. Ct. 600, 65 L. Ed. 1162. The claim now contended for was either abandoned or waived by patentee, or was rejected by the Patent Office. File wrappers, pages 2 to 12, 37, 38, 47, 75, 77, 82, 120, 121, 122, 142, 155, 156, 158, 161, 162, and 167.

[3, 4] In the construction of a patent, the understanding of the patentee at the time of its issuance may be considered as illuminative of the range within which it was understood at the time the patent issued. Victor Talking Mach. Co. v. American Graphophone Co., 151 Fed. 601, 81 C. C. A. 145; Goodyear Dental Vulcanite Co. v. Davis, 102 U. S. 222, 26 L. Ed. 149; Reece v. Globe Button Mach. Co., 61 Fed. 958, 10 C. C. A. 194; United Shoe Mach. Co. v. Greenman, 146 Fed. 759, 77 C. C. A. 22; St. Louis Street Mach. Co. v. American Street Mach. Co., 156 Fed. 574, 84 C. C. A. 340; St. Louis Trust Co. v. Studebaker Corp., 211 Fed. 980, 128 C. C. A. 478. For a fair understanding the claims and specifications must be read together. 1900 Washer Co. et al. v. Cramer et al., 169 Fed. 629, 95 C. C. A. 157; O. H. Jewell Filter Co. v. Jackson, 140 Fed. 340, 72 C. C. A. 304; Henry v. City of Los Angeles, 255 Fed. 769, 167 C. C. A. 113; Brooks v. Fiske, 15 How. 212, 14 L. Ed. 665; Mossberg v. Nutter, 135 Fed. 95, 68 C. C. A. 257. The claim of the plaintiff's first patent was anticipated by the prior art, and the claims of the second patent must rest upon the first patent, as "the same inventive idea embodies the claims of both patents." Mosler Safe & Lock Co. v. Mosler, 127 U. S. 354, 8 Sup. Ct. 1148, 32 L. Ed. 182.

There is no proof that there is any difference in the inventive concept underlying the apparatus and process in the two Carson patents and in the general principles specified and claimed in the Siemens patents. The law is satisfied by a description which those skilled in the art can understand. Diamond Rubber Co. v. Cons. Tire Co., 220 U. S. 428, 436, 31 Sup. Ct. 444, 55 L. Ed. 527.

The issue here is clearly a question of fact, the burden is on the plaintiff, and infringement must be established by clear and convincing testimony. Fried, Krupp Aktien-Gesellschaft, v. Midvale Steel Co., 191 Fed. 588, 112 C. C. A. 194. "The absence of actual fact proof is not met by the presence of expert speculations, no matter how voluminous," and "claims should cover what the patentee has invented and not what he imagines he has invented." Lovell v. Seybold Wash. Co., 169 Fed. 288 at page 290, 94 C. C. A. 578 at page 580.

From what has been said it is unnecessary to consider the effect of the disclaimers, or the Bender article, or further consider the divisional patent. In practical application and operation, in so far as it has relation to the tendered issue, the defendant has adopted the principle of the Siemens furnace and process of smelting.

Decree for defendant.

Cases cited by plaintiff and examined by the court; Ajax Metal Co. v. Brady (C. C.) 155 Fed. 415; Andrews v. Cross (C. C.) 8 Fed. 269; Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154; Brown v. Zaubitz (C. C.) 105 Fed. 242; Bowers v. Pacific (C. C.) 81 Fed. 571; Chapman v. Wintroath, 252 U. S. 137, 40 Sup. Ct. 234, 64 L. Ed. 491; Carnegie v. Cambria, 185 U. S. 403, 22 Sup. Ct. 698, 46 L. Ed. 968; Cluett v. Claflin (C. C.) 30 Fed. 922; Consolidated Co. v. Hassam, 227 Fed. 441, 142 C. C. A. 132; Diamond Rubber Co. v. Tire Co., 220 U. S. 435, 31 Sup. Ct. 444, 55 L. Ed. 527; Deering v. Winona, 155 U. S. 300, 15 Sup. Ct. 118, 39 L. Ed. 153; Dodge v. Post (C. C.) 76 Fed. 809; Dunkley v. Central (D. C.) 277 Fed. 1005; Diamond Co. v. Carr, 217 Fed. 400, 133 C. C. A. 310; Electrical Co. v. Julien (C. C.) 38 Fed. 134; Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. 1073, 30 L. Ed. 1064; Electric Co. v. Winton (C. C.) 104 Fed. 815; Hunt v. Cassidy, 53 Fed. 257, 3 C. C. A. 525; Heinz v. Cohn, 207 Fed. 547, 125 C. C. A. 197; Klein v. Russell, 19 Wall. 466, 22 L. Ed. 116; Los Alamitos v. Carroll, 173 Fed. 280, 97 C. C. A. 446; Lalance v. Habermann (C. C.) 53 Fed. 378; Manhattan v. Helios (C. C.) 135 Fed. 785–802; National Co. v. Brake Beam, 106 Fed. 693, 45 C. C. A. 544; O'Rourke v. McMullin, 160 Fed. 933, 88 C. C. A. 115; Petroleum v. Reward, 260 Fed. 177, 171 C. C. A. 213; Parker v. Stebler, 177 Fed. 212, 101 C. C. A. 380; Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566; Ross v. Montana (C. C.) 45 Fed. 425; Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 799, 36 L. Ed. 609; Schwartzwalder v. N. Y., 66 Fed. 152, 13 C. C. A. 380; Simplex v. Pressed Steel Co., 189 Fed. 70, 110 C. C. A. 634; Stebler v. Riverside, 205 Fed. 738, 124 C. C. A. 29; Symington v. National, 250 U. S. 386, 39 Sup. Ct. 542, 63 L. Ed. 1045; Tuck v. Bramhill, 24 Fed. Cas. 259; Taylor v. Archer, 23 Fed. Cas. 731; Turrill v. Railroad Co., 1 Wall. 491, 17 L. Ed. 668; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658; Walker on Patents, § 198; Winans v. Denmead, 15 How. 330, 14 L. Ed. 717; Brush v. Electric Co. (C. C.) 52 Fed. 974; Bowers v. S. F. Bridge Co. (C. C.) 91 Fed. 410; Hogg v. Emerson, 6 How. 485, 12 L. Ed. 505; Eibel v. Ontario, 261 U. S. 45, 43 Sup. Ct. 322, 67 L. Ed. 523.

Cases cited by plaintiff and not examined by the court: Ames v. Howard, Fed. Cas. No. 326, 1 Sumn. 482; Ex parte Reid, 15 O. G. 882; Ex parte McDougall, 18 O. G. 130.

Cases cited by defendant and examined by the court: Aron v. Manhattan Ry. Co., 132 U. S. 84, 90, 10 Sup. Ct. 24, 33 L. Ed. 272; Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438; Blake v. San Francisco, 113 U. S. 679, 5 Sup. Ct. 692, 28 L. Ed. 1070; Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200; Carnegie Steel Co. v. Cambria, 185 U. S. 403, 22 Sup. Ct. 698, 46 L. Ed. 968;

Cartridge Co. v. Cartridge Co., 112 U. S. 624, 5 Sup. Ct. 475, 28 L. Ed. 828; Clark Thread Co. v. Willimantic Linen Co., 140 U. S. 481, 11 Sup. Ct. 846, 35 L. Ed. 521; Deering v. Winona Harvester Works, 155 U. S. 286, 295, 15 Sup. Ct. 118, 39 L. Ed. 153; Diamond Rubber Co. v. Cons. Tire Co., 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527; Dunbar v. Eastern Elevating Co., 81 Fed. 201, 26 C. C. A. 330; Dunbar v. Meyers, 94 U. S. 187, 24 L. Ed. 34; Fisher v. Automobile Supply Co. (D. C.) 201 Fed. 543; Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U. S. 426, 38 Sup. Ct. 547, 62 L. Ed. 1196; Hailes v. Albany Stove Co., 123 U. S. 582, 8 Sup. Ct. 262, 31 L. Ed. 284; Heald v. Rice, 144 U. S. 737, 26 L. Ed. 910; Henry v. City of Los Angeles, 255 Fed. 769, 780, 167 C. C. A. 113; Hestonville Ry. Co. v. McDuffee, 185 Fed. 798, 109 C. C. A. 606; Holmes Electric Protective Co. v. Metropolitan Burglar Alarm Co. (C. C.) 33 Fed. 254; Knox v. Quicksilver Mining Co. (C. C.) 4 Fed. 809; Laas v. Scott (C. C.) 161 Fed. 122; Leggett v. Avery, 101 U. S. 256, 25 L. Ed. 865; Lovell v. Seybold Machine Co., 169 Fed. 288, 290, 94 C. C. A. 578; Lovell Mfg. Co. v. Cary, 147 U. S. 623, 13 Sup. Ct. 472, 37 L. Ed. 307; Lovell McConnell Mfg. Co. v. Oriental Rubber & Supply Co., 231 Fed. 719, 146 C. C. A. 3; McCreary v. Massachusetts Fan Co., 195 Fed. 498, 115 C. C. A. 408; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121; Minerals Separation, Ltd., v. Butte Co., 250 U. S. 336, 39 Sup. Ct. 496, 63 L. Ed. 1019; Mineral Separation, Ltd., v. Hyde, 242 U. S. 261, 37 Sup. Ct. 82, 61 L. Ed. 286; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429, 14 Sup. Ct. 627, 38 L. Ed. 500; Mosler Safe and Lock Co. v. Mosler, 127 U. S. 354, 8 Sup. Ct. 1148, 32 L. Ed. 182; National Malleable Castings Co. v. Buckeye, 171 Fed. 847, 96 C. C. A. 515; Palmer Pneumatic Tire Co. v. Lozier, 90 Fed. 732, 33 C. C. A. 255; Pennsylvania Railroad Co. v. Locomotive Truck Co., 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222; Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Roemer v. Peddie, 132 U. S. 313, 10 Sup. Ct. 98, 33 L. Ed. 382; Strause Gas Iron Co. v. Wm. M. Crane Co., 235 Fed. 126, 148 C. C. A. 620; Sutter v. Robinson, 119 U. S. 530, 541, 7 Sup. Ct. 376, 30 L. Ed. 492; Thatcher Heating Co. v. Burtis, 121 U. S. 286, 7 Sup. Ct. 1034, 30 L. Ed. 942; United States Hog-Hoisting Machine Co. v. North Packing & Provision Co., 158 Fed. 818, 819, 86 C. C. A. 78; Vandenburgh v. Truscon, 261 U. S. 6, 43 Sup. Ct. 331, 67 L. Ed. 507 (1923); Victor Talking Machine Co. v. Thos. A. Edison, Inc., 229 Fed. 999, 144 C. C. A. 281; Weber Electric Co. v. Freeman, 256 U. S. 668, 41 Sup. Ct. 600, 65 L. Ed. 1162; Wellman v. Midland Steel Co., 117 Fed. 826, 55 C. C. A. 47; Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136; Winston v. Croton Falls Construction Co., 194 Fed. 123, 114 C. C. A. 201; Application of Taylor, 52 App. D. C. 249, 285 Fed. 983; Automatic Weighing Machine Co. v. Pneumatic Scale Corp., 166 Fed. 288, 292, 92 C. C. A. 206; Baldwin v. Kresl, 76 Fed. 823, 22 C. C. A. 593; Christie v. Seybold, 55 Fed. 69, 76, 5 C. C. A. 33; Concrete Appliances Co. v. Meinken (C. C. A.) 262 Fed. 958; Eck v. Kutz

(C. C.) 132 Fed. 758, 763; Gold v. Gold, 187 Fed. 273, 109 C. C. A. 615; Goodyear Dental Vulcanite Co. v. Davis, 102 U. S. 222, 26 L. Ed. 149; Haughey v. Lee, 151 U. S. 282, 14 Sup. Ct. 331, 38 L. Ed. 162; Henry v. City of Los Angeles, 255 Fed. 769, 167 C. C. A. 113; Higgin v. Watson (C. C. A.) 263 Fed. 378; Hubbell v. Fitzgerald (D. C.) 283 Fed. 790; Hunnicutt-Charles Co. v. A. B. Gaston Co., 218 Fed. 176, 177, 134 C. C. A. 56; O. H. Jewell Filter Co. v. Jackson, 140 Fed. 340, 72 C. C. A. 304; Jones v. Sykes Metal Lath Co., 254 Fed. 91, 94, 95, 165 C. C. A. 501; Kohn v. Eimer (C. C. A.) 265 Fed. 900; Morse Chain Co. v. Link-Belt Co., 164 Fed. 331, 333, 90 C. C. A. 650; Mossberg v. Nutter, 135 Fed. 95, 99, 68 C. C. A. 257; Otis Elevator Co. v. Portland, 127 Fed. 557, 62 C. C. A. 339; Palmer v. Lozier, 90 Fed. 732, 33 C. C. A. 255; Paramount Hosiery Co. v. Moorhead Knitting Co. (D. C.) 251 Fed. 897; Reece v. Globe Button Hole Mach. Co., 61 Fed. 958, 10 C. C. A. 194; St. Louis Street Mach. Co. v. American Street Mach. Co., 156 Fed. 574, 84 C. C. A. 340; St. Louis Trust Co. v. Studebaker Corp., 211 Fed. 980, 128 C. C. A. 478; Thomson-Houston v. Ohio Brass Co., 80 Fed. 712, 26 C. C. A. 107; Thomson-Houston Elec. Co. v. Hoosick Ry. Co., 82 Fed. 461, 27 C. C. A. 419; Thomson-Houston Elec. Co. v. Jeffrey Mfg. Co., 101 Fed. 121, 41 C. C. A. 247; Twentieth Century Machinery Co. v. Loew Mfg. Co., 243 Fed. 573, 156 C. C. A. 153; United Shoe Mach. Co. v. Greenman, 146 Fed. 759, 77 C. C. A. 22; Victor Talking Mach. Co. v. American Graphophone Co., 151 Fed. 601, 81 C. C. A. 145; Washer Co. v. Cramer, 169 Fed. 629, 95 C. C. A. 157; Willard v. Union Tool Co., 253 Fed. 48, 51, 65 C. C. A. 646; Wood-Paper Patent Case, 23 Wall. 566, 23 L. Ed. 31; Eibel v. Ontario Paper Co., 261 U. S. 45, 43 Sup. Ct. 322, 67 L. Ed. 523; Evans v. Associated Automatic Sprinkler Co., 241 Fed. 252, 154 C. C. A. 172; Hubbell v. U. S., 179 U. S. 87, 21 Sup. Ct. 28, 45 L. Ed. 100; Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749; Brooks v. Fiske, 15 How., 212, 14 L. Ed. 665; Miller v. Eagle, 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121.

Cases cited by defendant and *not* examined by the court: Ex parte Ehredriech, 1904 Com. Dec. 75; Gallagher v. Hien, 115 O. G. 1330; Gilbert & Barker Mfg. Co. v. Walworth Mfg. Co., Fed. Cas. No. 5,-418, 2 Ban. & A. 271; Haskell v. Miner, 1904 Com. Dec. 131; Marsh v. Dodge & Stevenson Co., Fed. Cas. No. 9,115, 6 Fish. Pat. Cas. 562; Needham v. Washburn, Fed. Cas. No. 10,082, 4 Cliff. 254; Norden v. Spaulding, 114 O. G. 1828; Paul v. Johnson, 109 O. G. 807; Phelps v. Hardy, 77 O. G. 631; Roe v. Hanson, 99 O. G. 2550; Scott v. Cruse, 154 O. G. 252; Sherwood v. Drewsen, 130 O. G. 657; Smith v. Brooks, 112 O. G. 953; Ex parte Webster, 1902 Com. Dec. 456; Wyman v. Donnelly, 104 O. G. 310; Gibbons v. Peller, 124 O. G. 624; Gilman v. Hinson, 1906 C. D. 634; Kitchen v. Smith, 39 App. D. C. 500; McNeal v. Macey, 106 O. G. 2287; Paul v. Johnson, 109 O. G. 807.